LAMONT COMMUNITY CHURCH v
LAMONT CHRISTIAN REFORMED CHURCH

Docket No. 283154. Submitted September 9, 2009, at Grand Rapids.
Decided September 22, 2009, at 9:05 a.m.

Lamont Community Church (LCC) brought an action in the Ottawa
Circuit Court seeking a declaratory judgment quieting title to prop-
erty that had been owned by Lamont Christian Reformed Church
(LCRC) through the Lamont Christian Reformed Church Property
Corporation, an entity the LCRC had created in 1998. LCC, which
was formed in 2005 by departing members of the LCRC, asserted that
it was entitled to the church property because the LCC constituted a
majority of the confessing members of the LCRC. The LCRC filed a
counterclaim denying this assertion and seeking a declaratory judg-
ment that the LCRC was the owner of the property, arguing that the
Zeeland Classis, the regional assembly of churches to which the
LCRC belongs, had already determined that the LCRC was the
owner. Accordingly, because the denomination with which the LCRC
is affiliated, the Christian Reformed Church in North America
(CRCNA), is organized in a hierarchical rather than congregational
manner, the LCRC argued that the trial court was required to defer
to the Zeeland Classis's determination of ownership. Both parties
moved for summary disposition, and the LCC moved to disqualify the
law firm of Clark Hill as defendants' counsel. The court, Edward R.
Post, J., initially ruled that there was a genuine issue of material fact
regarding whether the CRCNA was structured hierarchically with
respect to property matters. However, after a hearing on a motion for
reconsideration at which the court considered testimony regarding
matters of church polity, it ultimately ruled that the denomination
was hierarchical with respect to property matters and that the court's
only role was to give effect to the ruling of the Zeeland Classis. After
this ruling, the property corporation transferred the church property
back to the LCRC and was dissolved. The trial court then issued an
order quieting title in the LCRC. The LCC appealed.

The Court of Appeals *held*:

1. The trial court did not err by failing to disqualify Stephen
Turner or the law firm for which he worked, Clark Hill, from
representing the LCRC because the LCC was never a client of

Clark Hill attorney Roger Swets, who had drafted some documents for the LCRC, or of Clark Hill itself. Accordingly, the Michigan Rules of Professional Conduct relating to conflicts of interest were not implicated.

2. The trial court had jurisdiction to determine whether the CRCNA was hierarchical or congregational. A determination that a religious organization is hierarchical does not divest trial courts of jurisdiction; rather, under the ecclesiastical abstention doctrine, it requires civil courts to resolve issues related to the religious polity in a manner that is consistent with determinations made by the highest body of the religious organization when entering a judgment.

3. The trial court correctly determined that the CRCNA was hierarchical with respect to property, although it erred by considering testimony regarding the CRCNA rather than relying solely on the relevant governing documents. A denomination is considered hierarchical when it has a central governing body that has regularly acted within its powers, and congregational when the governing powers and property ownership remain in the individual churches. The model articles of incorporation applicable to churches within the CRCNA grant authority to the class's to determine property disputes, with those determinations appealable to the synod. This is clear evidence that the CRCNA is hierarchical with respect to property ownership.

4. The trial court properly used the hierarchical method to resolve the property dispute rather than applying neutral principles of law. Under Michigan law, courts should use the hierarchical method unless it appears that there is an express trust in favor of one of the parties. Contrary to the LCC's argument, there is no express trust in favor of the property corporation that the LCRC created because the Zeeland Classis had already determined that the LCRC did not have the authority to create the corporation or to transfer church property to it without consent from the Zeeland Classis, which it did not have.

5. The trial court's rulings regarding the fact and timing of disaffiliation were consistent with those of the Zeeland Classis and therefore must be affirmed.

6. The fact that the Zeeland Classis failed to discover that the church property had been transferred from the LCRC to the property corporation that the LCRC created in 1998 does not estop the CRCNA from exerting its authority to determine property disputes.

Affirmed.

1. RELIGIOUS CORPORATIONS AND ASSOCIATIONS — JURISDICTION — ECCLESIASTICAL ABSTENTION DOCTRINE.

> A determination that a religious organization is organized in a hierarchical structure does not divest trial courts of jurisdiction; rather, under the ecclesiastical abstention doctrine, it requires civil courts to resolve issues related to the religious polity in a manner that is consistent with determinations made by the highest body of the religious organization when entering a judgment.

2. RELIGIOUS CORPORATIONS AND ASSOCIATIONS — CHURCH PROPERTY — ORGANIZATIONAL STRUCTURE.

> A denomination is considered hierarchical when it has a central governing body that has regularly acted within its powers and congregational when the governing powers and property ownership remain in the individual churches.

*Cunningham Dalman, P.C.* (by *Andrew J. Mulder* and *P. Haans Mulder*), for the plaintiff.

*Clark Hill PLC* (by *Stephen D. Turner* and *Gregory N. Longworth*) for the defendants.

Before: M. J. KELLY, P.J., and K. F. KELLY and SHAPIRO, JJ.

PER CURIAM. This property dispute arises from a congregational dispute among members of defendant Lamont Christian Reformed Church (LCRC) that resulted in certain members leaving and forming plaintiff Lamont Community Church (LCC). Both LCRC and LCC claimed ownership of the church property. LCC appeals as of right a judgment quieting title in LCRC. We affirm.

### I. BACKGROUND AND PROCEEDINGS

LCRC is affiliated with and a part of the Christian Reformed Church in North America (CRCNA or the Denomination). The governing document for CRCNA is

the Church Order. Pursuant to the Church Order, there are three assemblies of the Denomination: the council, the classis, and the synod. A council is made up of members of a congregation and manages the affairs of the individual church. A classis is a regional assembly of "neighboring churches" that oversees the congregations in its region and handles appeals from council decisions. Although appealable to synod, decisions made by classis are binding on the councils in the region when left unappealed, or unless and until the synod overrules them. The synod convenes annually and is made up of representatives from each regional classis. Decisions of synod are binding on all classes and councils in the Denomination, but may be appealed to the next synod.

LCRC was originally incorporated in 1880, but when its articles of incorporation terminated in 1902, LCRC reincorporated under 1901 PA 148 (MCL 458.421 *et seq.*), a statute adopted for the incorporation of Christian Reformed Churches. LCRC is a member of defendant Zeeland Classis.[1] The church property was acquired by LCRC in 1959. LCRC restated and amended its articles of incorporation in 1993.

In 1998, LCRC created defendant Lamont Christian Reformed Church Property Corporation (the Property Corporation) to hold the church property separate from LCRC so that if LCRC decided to leave the Denomination, it could do so and retain the church property. The Property Corporation was purposely made nondenominational. After the church property was transferred from LCRC to the Property Corporation, LCRC began to look into affiliating itself with the United Reform Church and, on September 15, 2004, LCRC's consistory

---

[1] Although Zeeland Classis was a defendant at the trial court level, it is not present on appeal.

approved the committee report that had been submitted for leaving the Denomination.

That same month, LCRC's pastor, Rev. Richard Terpstra, was involved in an accident and criminally charged with driving under the influence, to which he ultimately pleaded guilty. Around that same time, it came to light that, in 2003, Terpstra had been charged with indecent exposure, to which he entered a no-contest plea to a lesser charge of obscene and disorderly conduct. In light of these and certain other events, LCRC's decision to leave the Denomination was placed on hold.

In December 2004, LCRC suspended Terpstra from his duties and directed him to go to counseling, informing Zeeland Classis of its decision. In March 2005, when LCRC's consistory reinstated Terpstra, several members complained to the consistory about the reinstatement. Although LCRC's consistory was supposed to respond to the complaint, it chose to do nothing, sending a letter to Zeeland Classis indicating that it was not taking any action on the congregants' complaints. The members appealed the consistory's failure to take action to Zeeland Classis, which ultimately reinstated Terpstra's suspension and deposed him from the ministry. This decision was not appealed, and it was stipulated that Zeeland Classis had the authority to undertake this appeal and enact discipline against Terpstra, including reinstating his suspension and deposing him.

As a result of Zeeland Classis reinstating Terpstra's suspension, there were consistory meetings during which church elders discussed the possibility of leaving LCRC and going to another church. Shortly thereafter, a number of people announced they were leaving LCRC, but did not contact Zeeland Classis to consult regarding disaffiliation. On October 30, 2005, 132 signatures were obtained as "signatures of commitment" to an un-

named new congregation. In late November 2005, LCC transmitted articles of incorporation to the state, which were filed on December 2, 2005.

Sometime thereafter, LCC demanded that LCRC turn over the church property. Members of LCRC involved Zeeland Classis in the matter by requesting its assistance in the property dispute. The interim committee of Zeeland Classis, which handles all matters that occur between its three yearly meetings, met with representatives of LCRC and rendered a decision regarding property distribution. The committee determined that all rights in the church property belonged to LCRC, concluding that the members of LCC had disaffiliated from LCRC without following the appropriate disaffiliation procedures. It also noted that the articles of incorporation for the Property Corporation "clearly state that its purpose is to preserve all property rights for the Lamont CRC" and that LCRC continued to exist. The decision further stated that LCRC had failed to consult with Zeeland Classis when it created the Property Corporation and transferred the church property to it and that, if it had, Zeeland Classis would have ruled against permitting LCRC to do so. The committee concluded that the withdrawal from LCRC and the creation of LCC by the "disaffiliated members" was not a response to any doctrinal matter, but a reflection of their disagreement with the decision to depose Terpstra and noted that these members had failed to appeal the decision to synod in conformance with the Church Order. According to the committee, LCC "spurned any and all attempts of the Lamont CRC to work toward reconciliation of their differences" and "[s]ome of the disaffected members [] engaged in unchristian behavior." The committee determined that "by the provisions of the Church Order, the decisions of the Synod of CRCNA, and the unchristian actions of the disaffected

group, that the Lamont Christian Reformed Church is the continuing, legitimate church, and therefore the rightful agent of the church's property." The decision of the interim committee was voted on and approved by the entire body of Zeeland Classis at its May 17, 2006, meeting. There was no appeal to synod.

LCC filed a complaint requesting, among other things, a declaratory judgment that LCC was the owner of the church property, asserting that it was made up of a "majority of the confessing members of the Lamont Christian Reformed Church" and that decisions of the Property Corporation were not subject to review by any denomination, such that, pursuant to the bylaws of the Property Corporation, it was entitled to the church property. Defendants denied that LCC constituted a majority of the professing members of LCRC[2] and filed a counterclaim seeking a declaratory judgment that LCRC was the owner of the church property based on the hierarchical nature of the Denomination. LCC moved for partial summary disposition of LCRC's counterclaim for declaratory judgment. Defendants responded that given the hierarchical nature of CRCNA and Zeeland Classis's determination that LCRC was the owner of the property, under Michigan law, the trial court was required to accept that decision.

LCC also moved to disqualify the law firm of Clark Hill as defendants' counsel. LCC's counsel sent a letter to Roger Swets indicating that he was surprised Swets was representing LCRC because "[i]f the Court determines that the Articles of Incorporation, Bylaws, and Lease are ambiguous and required testimony from the 'scrivener' of the documents, it seems inevitable that

---

[2] LCC has admitted that the counting process to determine which congregation contained the majority of the professing members has not yet occurred.

you will be a witness to testify regarding the drafting and intent of the Articles of Incorporation, Bylaws, and Lease." LCRC's counsel, Stephen Turner, responded to the letter, indicating that both he and Swets were representing LCRC and that, in the event of litigation, Turner "will be taking the lead." Turner disagreed that Clark Hill was ethically barred from representing LCRC under the Michigan Rules of Professional Conduct (MRPC). The trial court denied LCC's motion to disqualify, concluding that it was clear that only LCRC and the Property Corporation had been Swets's clients and that neither LCC nor the individual members of LCRC were clients.

The trial court considered cross-motions for summary disposition. LCC argued that its requested relief was a declaration of ownership to property that was clearly a request for the equitable jurisdiction of Michigan civil courts. LCC noted that there were two approaches to church property disputes recognized by the United States Supreme Court: the hierarchical/polity approach and the neutral principles of law approach. LCC maintained that it should prevail under either standard because under the hierarchical approach, although CRCNA was previously held to be hierarchical by Michigan courts, it had changed over time to become congregational with respect to property ownership. Under the neutral principles of law approach, there was an express trust provision in the bylaws of the Property Corporation, and the Church Order as it existed at the time of the creation of the Property Corporation did not prohibit that transfer.

Defendants argued that, as a matter of law, the appropriate test is the hierarchical rule rather than the neutral principles of law approach, and that Zeeland Classis had already determined that LCRC was entitled

to the property with no appeal of the issue to synod. LCRC stated that the fundamental question before the trial court was whether the polity of the Church Order trumped the civil documents establishing the Property Corporation and whether the CRCNA had the ultimate right and power to decide the control and ownership of the property. LCRC believed that CRCNA did have that right based on caselaw establishing that CRCNA was hierarchical.

The trial court noted that the record of title did not contain a reversionary interest to CRCNA and that CRCNA was not a grantee in the deed and asked what the legal nature of CRCNA's interest in the property was. Defendants argued that CRCNA did not own the property, but rather, as a hierarchical denomination, CRCNA had the right to determine who owned the property and the structure of that ownership. The trial court framed the issue as whether, when the church property was transferred to the Property Corporation in 1998, LCRC had the authority to do that free and clear of any interest on behalf of CRCNA. LCC argued that because the Property Corporation was nondenominationally affiliated, there was no way that CRCNA had any authority to review the transfer of the property.

The trial court ruled that CRCNA was clearly hierarchical with respect to doctrinal and spiritual matters, but it was unclear whether it was also hierarchical with respect to property matters. It concluded that there was a genuine issue of material fact "regarding the structure of governance within the CRCNA for church property disputes." It further ruled that, as a matter of law, if CRCNA was hierarchical, it would defer to the Denomination to decide the dispute because Michigan had adopted the hierarchical theory as the preferred approach.

In response to a motion for reconsideration filed by plaintiff, the trial court issued another opinion, concluding that "1) a church's authority to resolve church disputes is jurisdictional in nature, 2) jurisdiction is a legal issue and that issues of law must be decided by a judge, and 3) the core claims in this case are equitable in nature and as a result, are for the Court to decide." It ordered a factual hearing at which time it, not a jury, would decide the "jurisdiction"[3] of the case and withheld further determination of the ownership issue until after completion of the factual hearing. At the "jurisdictional" hearing, the parties stipulated that Swets's presence as a witness was unnecessary. The sole issue before the trial court was whether CRCNA was hierarchical or congregational with respect to holding property.

The trial court heard testimony from Henry DeMoor, a former pastor and current professor of church polity and vice president for academic affairs at Calvin Theological Seminary;[4] Stanley Zemaitis, a member of LCRC and former vice president of its consistory during the time of the property transfer; Dale Grooters, another member of LCRC who served on the consistory during 1997 and 1998; Lloyd Lunceford, an attorney from Louisiana who had engaged in theological coursework in a non-degree program and whose law practice focuses on ecclesiastical law or church property law; Ronald Meyer, pastor of Drenth Christian Reformed Church, a member church of CRCNA, and stated clerk for Zeeland Classis; and Peter Borgdorff, former executive director of CRCNA.

---

[3] We place this term in quotation marks because, as discussed below, it is a misnomer.

[4] Calvin Theological Seminary is the only seminary owned by CRCNA.

The trial court ultimately issued a written opinion. It began by noting that whether a church was hierarchical or congregational was a question of fact. It considered the Michigan Supreme Court's previous declaration that CRCNA was hierarchical, but determined that subsequent caselaw had indicated that a denomination could be hierarchical with respect to spiritual matters, but congregational with respect to ownership of property, thus requiring the court to determine whether CRCNA was hierarchical or denominational with respect to the ownership of real property. After reviewing a history of both the Denomination and LCRC and the actions of each, it arrived at "[t]he inescapable conclusion [] that the Denomination is hierarchical as to the ownership of real property" because of "the nature and extent of the power over congregational activities vested in the broader bodies of Classis and Synod." It was "convinced that Classis has full authority to nullify any decision made by any council," that Zeeland Classis could have prevented the transfer of the church property had it been made aware, and that Zeeland Classis could have ordered the council members who formed the majority of the board of directors of the Property Corporation to transfer the church property back to LCRC.[5] Accordingly, the trial court's only role was "to give effect to the rulings of Classis and Synod." It dismissed plaintiff's complaint, but retained jurisdiction to "implement civil law remedies necessary to effectuate the ruling of Classis and to quiet title to the church real estate."

---

[5] The trial court did note that had the church property been sold to a bona fide purchaser for value, the outcome would have been different, but that because the Property Corporation was "a mere instrumentality" of LCRC and controlled by members of LCRC, the Property Corporation was not a bona fide purchaser for value.

A dispute ensued over what orders needed to be entered and whether title had to be quieted for an appeal to be taken. During this time, the Property Corporation transferred the church property back to LCRC and the Property Corporation was dissolved. After this Court dismissed two appeals for lack of jurisdiction, the trial court quieted title to the church property in LCRC, but ruled that during the appeal LCRC could not sell or further encumber the property without an order from the court and that LCC did not have to post an appeal bond. LCC then filed the instant appeal.

## II. ATTORNEY DISQUALIFICATION

We first address LCC's claim that the trial court erred by failing to disqualify the law firm of Clark Hill from representing defendants in this matter. We review the factual question of the existence of a conflict of interest that disqualifies counsel for clear error, but review de novo the application of "ethical norms" to a decision whether to disqualify counsel. *Avink v SMG*, 282 Mich App 110, 116; 761 NW2d 826 (2009). Factual findings are clearly erroneous only if this Court is "left with a definite and firm conviction that a mistake was made." *Id.*

LCC maintains that it was a prior client of Swets and that Clark Hill and Turner therefore were precluded from representing defendants in this matter. We disagree. LCC initially argued that Turner was precluded from representing defendants under MRPC 3.7 because Swets was going to be a necessary witness and Turner was a member of the same firm. MRPC 3.7(b) provides, "A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7

or Rule 1.9." MRPC 1.7(a) and 1.9 prohibit the representation of a client where that representation is directly or materially adverse to another client or former client.

We find both of these rules inapplicable, however, because LCC was never a client of either Swets or Clark Hill. Indeed, when a member of LCC asked Swets to represent LCC, Swets replied that he was precluded from doing so because he previously represented LCRC. Under MRPC 1.13, lawyers "employed or retained to represent an organization represent[] the organization as distinct from its directors, officers, employees, members, shareholders, or other constituents." It is undisputed that LCRC and the Property Corporation are both clients of Swets and Clark Hill. LCC attempts to bootstrap itself into the position of client by arguing that because the stated purpose of the Property Corporation is to carry out the purposes of LCRC or "any church formed by a majority of the members" of LCRC, LCC as that entity is also a client of Swets. What this argument fails to register is that LCC is a separate organization, distinct from either LCRC or the Property Corporation, and neither Swets nor Clark Hill has ever represented the entity LCC. It makes no difference whether LCC is a church formed by a majority of the members of LCRC (a fact that remains in dispute given that LCC conceded a count had not taken place). Corporations exist for the benefit of many groups of people, including other companies or their own shareholders. However, that does not make those groups or shareholders clients of the attorneys who represent the corporations themselves. This is the crux of MRPC 1.13. Because LCC is neither a current nor former client of either Swets or Clark Hill, MRPC 1.7 and 1.9 are not implicated, and MRPC 3.7 permitted Turner to repre-

sent defendants. We hold that the trial court properly declined to disqualify either Turner or Clark Hill.

### III. JURISDICTION

LCC next argues that the trial court erred by concluding that whether the Denomination was hierarchical or congregational was a question of fact. LCC contends that whether a church is hierarchical or congregational is a question of jurisdiction, which is a legal issue, and caselaw is clear that trial courts are vested with the jurisdiction to determine property disputes. We conclude that LCC has, understandably, confused the legal question of jurisdiction with the factual question of whether a church is hierarchical or congregational.

Plaintiff is correct that jurisdiction is a legal issue. *Todd v Dep't of Corrections*, 232 Mich App 623, 627; 591 NW2d 375 (1998). Plaintiff is also correct that civil courts have the general authority to resolve church property disputes. *Bennison v Sharp*, 121 Mich App 705, 712; 329 NW2d 466 (1982).

> The First Amendment, however, "severely circumscribes the role that civil courts may play in resolving church property disputes" by prohibiting civil courts from resolving church property disputes on the basis of religious doctrine and practice and requiring that courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization. [*Id.* at 712-713, quoting *Jones v Wolf*, 443 US 595, 602; 99 S Ct 3020; 61 L Ed 2d 775 (1979).]

The determination of whether a denomination is hierarchical is a factual question. See *Calvary Presbyterian Church v Presbytery of Lake Huron of the United Presbyterian Church*, 148 Mich App 105, 113; 384 NW2d 92 (1986) (holding that "the trial court correctly

found that the Denomination is hierarchical"); *Bennison, supra* at 718 (holding that "the undisputed facts show the Protestant Episcopal Church to be hierarchical").

The difficulty is that certain opinions of this Court conclude that when a church is hierarchical, civil courts lack "subject matter jurisdiction."[6] This characterization is a misnomer, as it would preclude trial courts from entering enforceable judgments, leaving parties who are attempting to enforce their rights as determined by a hierarchical denomination without a remedy. A determination that an organization is hierarchical does not divest trial courts of jurisdiction. Rather, it results in what our Supreme Court has referred to as an "ecclesiastical abstention doctrine." *Smith v Calvary Christian Church*, 462 Mich 679, 684; 614 NW2d 590 (2000). The doctrine recognizes that where the facts indicate that a denomination is hierarchical, "civil courts may not redetermine the correctness of an interpretation of canonical text or some decision relating to the government of the religious polity," *id.* (quotation marks and citation omitted), but must defer to the resolution of those issues "by the highest court of a hierarchical church organization," *Bennison, supra* at 713. Thus, when a denomination is determined to be hierarchical, trial courts have jurisdiction to enter a judgment, but the judgment must resolve the matter consistent with any determinations already made by the denomination. Because this is precisely what the trial court did in this case, we find no error.

---

[6] For example, in *Leach v Johnson*, unpublished opinion per curiam of the Court of Appeals, issued June 18, 2009 (Docket No. 283626), a panel of this Court concluded that "the trial court did not err when it determined that Assemblies of God is a hierarchical organization, thus precluding subject matter jurisdiction." *Id.* at 5.

### IV. HIERARCHICAL/CONGREGATIONAL

LCC next argues that the trial court erred when it determined that CRCNA was a hierarchical denomination, rather than congregational in nature, with respect to property.

As an initial matter, we note that much of the testimony went well beyond anything the trial court should have considered. The United States Supreme Court has held that it is a violation of the First and Fourteenth amendments for courts to substitute their own interpretation of a denomination's constitution "for that of the highest ecclesiastical tribunals in which the church law vests authority to make that interpretation." *Serbian Eastern Orthodox Diocese v Milivojevich*, 426 US 696, 721; 96 S Ct 2372; 49 L Ed 2d 151 (1976). Where a denomination's constitutional provisions are "not so express that the civil courts could enforce them without engaging in a searching and therefore impermissible inquiry into church polity," *id.* at 723, courts must accept the interpretation provided by the denomination and "not delve into the various church constitutional provisions relevant to this conclusion," *id.* at 721. Here, the trial court ran afoul of this rule. The question was whether CRCNA was hierarchical with respect to property. That decision had to be based on the language of the Church Order and other governing documents. To the extent that the Church Order was unclear in that regard, the trial court was required to accept any interpretation made by the highest governing body permitted to make that decision. *Id.* Instead, the parties elicited testimony on when certain provisions of the Church Order took effect, whether CRCNA followed its own procedures on policy implementation, whether certain provisions were mandatory, whether a disaffiliation occurred, and whether

the disaffiliation procedure was applicable, all of which are matters of church polity.[7] Thus, the hearing devolved into an impermissible "searching" inquiry into the polity of CRCNA in an effort to properly construe the various provisions of the Church Order. In an effort not to repeat the error, see *id.*, we have not relied on the testimony from the hearing, but have relied on the documents themselves for our determination.[8]

"[A] denomination is organized in a hierarchical structure [when it has] a central governing body which has regularly acted within its powers" while "the looser 'congregational' structure" generally has "all governing powers and property ownership remaining in the individual churches." *Calvary Presbyterian Church, supra* at 108 n 1. The parties agree that CRCNA has a presbyterial form of government. This concession by itself seems to belie LCC's argument that CRCNA is congregational, as Michigan caselaw defines presbyterial as the opposite of congregational. See, e.g., *id.* at 113 ("[T]he trial court correctly found that the Denomination is hierarchical even though it possesses a representative form of government, that the decisions of that

---

[7] Particularly troubling is the testimony that clearly entered into religious matters. For example, Lunceford testified regarding his review of "the Belgic Confession, [t]he Canons of Dordt and the Heidelberg Catechism" and which provisions he found germane to what the Denomination considered an ecclesiastical matter. DeMoor testified that article 27 of the Church Order "says that the ecclesiastical authority entrusted to the church is entrusted to the Church by Christ" and that because the synod is the typification of Christ, it has control over everything and agreed that CRCNA and the synod "can justify anything under Article 27 because they have the power of Christ."

[8] In this regard, we agree with plaintiff that the trial court should not have accepted the testimony that "recommend" really meant "required." In *Jones, supra* at 604, the United States Supreme Court held that "a civil court must take special care to scrutinize the document in purely secular terms, and not to rely on religious precepts in determining" the intent of the document.

government (here, the Presbytery) are not reviewable by the state and thus the decision of the Denomination to retain the real estate upon the withdrawal of the Church is binding upon the counts [sic: courts].”); *Second Protestant Reformed Church of Grand Rapids v Blankespoor*, 350 Mich 347, 350; 86 NW2d 301 (1957) (concluding that the question is whether the Protestant Reformed Churches of America “is congregational or presbyterian”); *Borgman v Bultema*, 213 Mich 684, 690; 182 NW 91 (1921) (determining whether the CRCNA had “the presbyterial form of government, as contradistinguished from [the] congregational form of government”). Indeed, in *Borgman*, the Michigan Supreme Court adopted verbatim the trial court’s ruling that the CRCNA was hierarchical:

> “As I understand defendants’ theory it is that the classis and synod may act in an advisory capacity to the consistory, but that in case their advice is disregarded they are powerless, to enforce their authority over the local church.
>
> “I cannot agree with defendants’ contention in this regard. I do not see how any one could read the 86 articles of the church order of the Christian Reformed Church, which is the supreme law or constitution of the church, without coming to the conclusion that this religious denomination is much more than a federation of churches. In fact, the 86th article explicitly says that these articles are the supreme law of the church, and that no congregation or classis is at liberty to alter, augment, or diminish them, and that they shall be observed as such until otherwise ordained by the synod. All the officers of the church are created, fixed and determined by this constitution; their duties are set forth and defined therein, and their terms, office and manner of election are created thereby. There could be no such thing as a local church or a consistory of the ministers or a classis without this constitution. The minister of the local church can only be called and installed and hold his office in the manner provided by this constitution. This is equally true of the consistory. These articles

provide that no minister or consistory can be installed without subscribing to the formula of subscription established by the church, and that in case they obstinately persist in refusing to subscribe to such formula they shall be deposed from their office. *We cannot conceive of a form of church government more presbyterial in its nature than the one defined and set forth in these 86 articles.*" [*Id.* at 690-691 (emphasis added).]

All the characteristics used by the Supreme Court in *Borgman* to determine whether CRCNA was hierarchical are still contained within the Church Order.

LCC contends, however, that CRCNA is hierarchical only as to ecclesiastical matters and is congregational with respect to property ownership (which, it asserts, is not an ecclesiastical matter). Our review of the documents, however, results in our agreement with the trial court that CRCNA is hierarchical with respect to property.

LCC's argument that CRCNA is congregational with respect to property ownership rests entirely on the model articles of incorporation (model articles), which the synod adopts and alters. LCC argues that the model articles adopted in 1970 gave CRCNA a "distinctly congregational" model and that the 1980 model articles were "even more 'distinctly congregational,' " but that the 1997 model articles then shifted back to a wholly hierarchical system.

Article VI of the 1997 model articles provided:

A. **Manner in Which Held**

All real and personal property shall be held exclusively in furtherance of the purposes of this church as a member church of the Christian Reformed Church in North America and in furtherance of the principles of doctrine and ecclesiastical government outlined under Articles III and V of these Articles of Incorporation and interpreted by

the classis of which the church is a member (the "classis") subject to review on appeal by synod consistent with the Church Order.

\* \* \*

### D. **In the Event of Irreconcilable Division**

In the event that the classis (or synod on appeal) determines that an irreconcilable division (schism) has occurred within this church, the confessing members of this church who, according to the exclusive determination of the classis (or synod on appeal), remain true to the purposes of this church as a member church of the Christian Reformed Church in North America and the principles of doctrine and ecclesiastical government outlined under Articles III and V of these Articles of Incorporation shall be the lawful congregation of this church and shall have the exclusive right to hold and enjoy the real and personal property of this church. Nothing in this Article VI shall prevent the classis (or synod on appeal) from determining, in keeping with the scriptural injunction of I Corinthians 6, that more than one group of confessing members of this church are each a lawful congregation and dividing the real and personal property between the groups of members as classis (or synod on appeal) may determine.

The very fact that the model articles include provisions related to the classis and synod's authority to determine property disputes clearly evidences that CRCNA is hierarchical with respect to property ownership.

LCC argues that adherence to these model articles is completely voluntary and that, because LCRC properly incorporated under the 1980 "congregational" model articles, LCRC could maintain a congregational model of ownership even when the model articles were changed in 1997. We disagree. Article 32(d) of the Church Order provides, "Each assembly shall provide for the safeguarding of its property through proper incorporation." The Church Order supplement for ar-

ticle 32(d) then provides the model articles. Nothing in the language of the Church Order, the Church Order supplements, or the model articles themselves suggests that the model articles are voluntary. In fact, the Church Order uses "shall," which is mandatory language. See also Manual of Christian Reformed Church Government, 2001 Revision, p 242 ("Article 38-c requires that a classis must be informed about a pending disbanding of a congregation, must approve such action, and must be consulted about the distribution of assets. A congregation's Articles of Incorporation should include these provisions and may include additional requirements to be met in the dissolution/disbanding process.").

LCC contends that the model articles are voluntary on the basis of language from the 1998 acts of the synod written in response to overtures (requests) to revise the 1997 decision on article IV (D) of the model articles. It was recommended that the synod "not accede to these overtures," that is, leave the 1997 article IV (D) unchanged, and included multiple grounds for the recommendation, the first of which was, "Since the new Model Articles of Incorporation are recommended to the churches with the understanding that each congregation may voluntarily implement them, the original authority of the local councils (as described in Church Order Article 27) is not violated." This does tend to support LCC's argument that the model articles are voluntary rather than mandatory. However, reading further, it appears that the synod declined to alter the 1997 model articles property provision, at least in part, because even the pre-1997 model articles presupposed that the classis (and synod on appeal) would determine a property dispute in the event of a disaffiliation or schism.

The previous version of model articles from 1980 included the following provision for determination of property disputes by classis:

> In the event of a schism in this church . . . , if a division of the property becomes necessary, this shall be found according to the scriptural injunction of I Corinthians 6. Every effort shall be made to achieve a just and fair property division of the property. *To this end, counsel, assistance and advice shall be sought first from the Classis and Synod* . . . .

LCC argues that this counsel or assistance from the classis was nonbinding. However, that argument was already refuted in *Borgman*, where the Michigan Supreme Court rejected the position of the local church that the "classis and synod may act in an advisory capacity to the consistory, but that in case their advice is disregarded they are powerless, to enforce their authority over the local church." *Id.* at 690. Thus, even under the 1980 version of the model articles, which LCC contends was the version LCRC incorporated under, the Denomination believed it had the authority to determine property disputes in the event of disaffiliation or schism, making it hierarchical with respect to real property ownership.

In any event, the fact that the model articles changed over time and did, at one time, permit a more lenient form of property ownership does not change the fact that, in 1997, the Denomination changed the model articles again, giving itself a more active role in property disputes. As this Court stated in *Calvary Presbyterian Church*:

> Times change, and it must be presumed that the original agreement to be bound by the Denomination's decisions included the possibility that the local Church might not agree with all those decisions. In this case the Denomi-

nation apparently changed its outlook and policies between 1941 and 1980. The majority of the members of the Church did not. They were free as individuals to leave the Denomination, but not to depart from the "rules" which the Church had originally agreed to abide by, one of which was that the Denomination could supersede the Church's powers to govern itself by replacing its governing Session in the event of a dispute and that the Administrative Commission could determine to keep the real estate in the possession of the Denomination to the use of the nondeparting members. [*Calvary Presbyterian Church*, *supra* at 112-113.]

Here, the Denomination changed its policies in 1997. Those members who left LCRC to form LCC were free to leave both LCRC and the Denomination, but they could not prevent LCRC from being bound by the rules of the Denomination, which included that the Denomination could require church property disputes be decided by the classis with appeal to synod. The language in the Church Order and Church Order supplements, including both the 1980 and 1997 versions of the model articles, evidence an intent to set the Denomination up as the arbiter of property disputes, making it a hierarchical organization with respect to property ownership. Accordingly, the trial court's determination that CRCNA was hierarchical with respect to property was correct.

### V. HIERARCHICAL METHOD/NEUTRAL PRINCIPLES OF LAW METHOD

LCC next argues that the trial court erred in using the polity/hierarchical method to determine property ownership rather than the neutral principles of law method. Michigan law provides that courts should generally use the hierarchical method. See, e.g., *Calvary Presbyterian Church*, *supra*; *Bennison*, *supra*. However, the neutral principles of law method may be appropriate in situations such as those where "it appears from

the church constitution, canons or rules, or from some other source, that an express trust exists in favor of one or the other of the contending parties . . . ." *Bennison, supra* at 724.

LCC argues that this case falls within the latter category because there is an express trust. LCC relies on the language in the bylaws and articles of incorporation for the Property Corporation, which states, in relevant part, that the purpose of the Property Corporation is "[t]o operate exclusively for the benefit of, and to carry out the purposes of the Lamont Christian Reformed Church, Coopersville, Michigan, or any church formed by a majority of the members of the Lamont Christian Reformed Church . . . ." Reliance on this language is only valid, however, as long as LCRC had the authority to set up the Property Corporation and transfer ownership of the church property to the Property Corporation. If LCRC had no such authority, the provisions of the Property Corporation are void. See *Blankespoor, supra* at 352 (holding that once a local church submits itself to the authority of a hierarchical denomination, provisions of the denomination's constitution override inconsistent provisions in a local church's articles of association).

Our determination whether LCRC had such authority is limited because "civil courts may not redetermine the correctness of an interpretation of canonical text or some decision relating to government of the religious polity." *Smith, supra* at 684 (citation and quotation marks omitted). See also *Milivojevich, supra* at 709 (holding that when disputes require inquiry into religious law and polity, civil courts shall not disturb the ecclesiastical body's decision). In this case, the Denomination, through the classis, has already decided this issue and determined that LCRC was without authority

both to create the Property Corporation and to transfer
the church property to the Property Corporation with-
out consent from Zeeland Classis. It concluded that the
members of LCRC who were unhappy with the direc-
tion of the Denomination

> did not honor the intent of the Form of Subscription, which
> each of them signed when they took office, to follow the
> proper channels to express their disagreement with the
> decision(s) of Classis Zeeland, or to appeal such a decision.
> Instead, in violation of their signatures, some disaffected
> members actually promoted schismatic activity within the
> Lamont CRC, and continue to do so.

Most importantly, it noted that LCRC had not con-
sulted with Zeeland Classis when it filed the articles
of incorporation for the Property Corporation and
held that "[i]f they had, Classis would certainly have
ruled against doing so in this way." Thus, the De-
nomination determined that LCRC was without au-
thority to create the Property Corporation and that
by doing so, LCRC violated the Church Order. This
Court may not redecide those issues. *Smith, supra* at
684. Accordingly, LCRC did not have the denomina-
tional authority to create the Property Corporation
or to transfer ownership of the church property to the
Property Corporation, and because those actions
were unauthorized and inconsistent with the Church
Order, they are void. *Blankespoor, supra.* As a result,
there is no express trust and, without an express
trust, the hierarchical method is preferred. *Bennison,
supra* at 724. Accordingly, the trial court properly
applied that method in this case.

VI. DISAFFILIATION

LCC next argues that the trial court erred in its
determinations regarding when the disaffiliation proce-

dure took effect, its interpretation of the Church Order, and its retroactive application of the disaffiliation procedure. As before, our determination of these issues is limited. *Smith, supra* at 684. Here, Zeeland Classis already determined that disaffiliation occurred and the decision was not appealed to synod. Accordingly, this Court must abstain from deciding this issue and defer to the Denomination's decision, through the classis, that disaffiliation occurred.

Similarly, neither the trial court nor this Court may determine when the disaffiliation procedure took effect because the Denomination already interpreted its governing documents to conclude when the procedure took effect and determined that it took effect in 1997. See Manual of Christian Reformed Church Government, 2001 Revision, p 243 ("Synod 1997 adopted a disaffiliation procedure that must be followed by all churches proposing disaffiliation."). All of LCC's arguments related to the procedure for adoption of changes to the Church Order, and questioning whether the Denomination properly acted according to its own laws are outside the scope of what civil courts may decide, as these actions are clearly matters of ecclesiastical polity in which the courts may not interfere. *Holt v Trone,* 341 Mich 169, 174; 67 NW2d 125 (1954).

LCC's entire argument regarding to the property transfer also rests on civil courts interpreting ecclesiastical documents related to church polity. LCC argues that LCRC conveyed the church property to the Property Corporation on June 11, 1998, and that "[i]t was not until after this transfer that the synod ratified an article to the Church order that required that disaffiliation be resolved by the church authority." Indeed, the premise of its issue statement, that "none of [CRCNA's] governing documents contained such a restriction," is

directly contrary to the Denomination's determination of when the disaffiliation procedure took effect and that the creation of the Property Corporation was an act of disaffiliation. As before, where the Denomination itself has already determined that the property transfer to the Property Corporation was improper under the requirements of the Church Order, this Court must defer to those decisions. *Bennison, supra* at 713.

Accordingly, this Court must conclude, consistent with the Denomination's determinations, that disaffiliation took place, that the disaffiliation procedure was in effect in 1997 before the creation of the Property Corporation and the transfer of the church property, that the Denomination restricted LCRC from transferring the church property to the Property Corporation because it was an act of disaffiliation, and that the transfer had no effect on CRCNA's ability to determine the property dispute because it was entitled to do so under the disaffiliation procedure.

## VII. ESTOPPEL

LCC's final argument on appeal is that defendants are estopped by CRCNA's failure to enforce the status of the Church Order and its supplements during the relevant time because Zeeland Classis failed to visit LCRC annually and review the minutes properly and, had it done so, it would have discovered the transfer. Defendants argue that estoppel has no application to the internal workings of the church.

We find it unnecessary to determine whether estoppel has any application to church property disputes because it does not apply here. In *Calvary Presbyterian Church*, a similar argument was made and this Court held that no estoppel was created:

> The Church further argues that the Denomination is estopped from now asserting an implied trust in the real estate when, in the mid-seventies, it allowed the Church, without dispute, to sell a house similarly held. The trial court did not find, nor do we, that this created an estoppel. The fact that the Denomination did not interfere with the actions of the Church in regard to that piece of property does not forestall it from now, during this doctrinal division, asserting its right to claim and retain ownership of the remaining Church property. [*Id.* at 113-114.]

The same is true here. The fact that Zeeland Classis did not discover the transfer of the church property to the Property Corporation in 1998 because it failed to thoroughly review all of LCRC's documents does not preclude the Denomination from exerting its authority under the Church Order to determine property disputes.

Affirmed. Defendants are entitled to costs under MCR 7.219.