# STATE OF MICHIGAN

# COURT OF APPEALS

SHAMAMA ORAM,

        Plaintiff/Counter-Defendant-
        Appellant,

and

ZIA ORAM,

        Plaintiff/Counter-Defendant,

and

VICTORY BEER WINE & LIQUOR, LLC,

        Intervening Plaintiff-Appellant,

v

6 B'S, INC, doing business as VICTORY
LIQUOR & FOODS,

        Defendant/Counter-Plaintiff/Third-
        Party-Plaintiff-Appellant,

and

16200, LLC,

        Defendant/Counter-Plaintiff/Third-
        Party-Plaintiff,

and

VAL PROPERTIES, LLC, JOHN YELDA, TOM
DIKHO, and WARREN ST. MARY'S
INVESTMENT, LLC,

        Defendants,

UNPUBLISHED
January 16, 2018

No.   332925
Wayne Circuit Court
LC No.   12-005416-CK

-1-

and

WALLY YELDA and HAYTHAM DIKHO,

                Defendants-Appellees,

and

LATIF Z. ORAM,

                Third-Party-Defendant.

Before:  JANSEN, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

In this breach of contract and tort action, plaintiffs[1] appeal as of right the trial court's judgment on the jury's verdict partially in favor of Shamama Oram, and partly in favor of defendants[2]. Because plaintiffs have not provided any grounds warranting reversal, we affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case has a long and contentious history almost all of which is entirely irrelevant to the issues presented by plaintiffs on appeal.  In light of that, despite the vastness of the record, our review will have a narrow focus on the issues presented, which include whether defendants' counsel, Lawrence Walker, should have been disqualified, and whether plaintiffs are entitled to a new trial due to Walker's alleged misconduct during trial.

Zia Oram, now deceased, and his wife Shamama leased a building they owned in Detroit to a company to operate a party store in it.  That lease was eventually assigned to 6 B's, Inc., and contained a personal guaranty by Wally Yelda and Haytham Dikho.  When the lease expired on July 1, 2011, defendants refused to vacate the building until March of 2012 when a new building nearby was ready for them to relocate the store.  During the holdover, defendants did not pay the rent of $2,800 per month required by the lease.  Plaintiff Shamama sued, alleging, among other claims, that defendants are liable for breach of contract, conversion, and tortious interference

---

[1] For the sake of simplicity, we refer to Shamama Oram and Victory Beer Wine & Liquor, LLC (VBWL) as "plaintiffs" because all the claims of the other plaintiffs, counter-plaintiffs, and third-party plaintiffs were summarily disposed before trial and are not being appealed herein.

[2] Again, for the sake of clarity, we refer to 6 B's, Inc., Wally Yelda, and Haytham Dikho as "defendants" because all the claims against the other defendants, counter-defendants, and third-party defendant were summarily disposed before trial and are not being appealed herein.

with her business relationship with Victory Beer Wine & Liquor, LLC (VBWL), which was owned by her son, Latif Oram. Shamama contended that she was denied the $4,000 per month rent pursuant to a lease she had with VBWL set to commence when her lease with defendants ceased.

In a filing earlier in this action, that is not otherwise relevant to the instant appeal, 6 B's filed a third-party complaint against Latif. In late 2012, before VBWL had intervened, Latif moved the trial court to disqualify Walker as defendants' attorney, asserting that Walker had previously represented Latif and Walker had threatened to use privileged information obtained during that representation in this action. Shamama did not join the motion and the trial court denied it. Later, Latif's company VBWL intervened as a plaintiff, asserting that defendants had tortiously interfered in VBWL's lease with Shamama. Shortly thereafter, Latif was granted summary disposition regarding the third-party complaint filed against him and was dismissed from the case with prejudice.

After many days of trial, the jury found that defendants had breached their contract with Shamama and that she suffered $24,776.50 in damages. The jury also found no cause of action on Shamama's conversion claim and plaintiffs' tortious interference claims. The trial court entered a judgment on that verdict. Plaintiffs moved for a new trial or additur, arguing, among other things, that Walker's conduct during trial resulted in the jury making its decision based on passion and prejudice instead of the facts of the case. The trial court denied that motion. This appeal followed.

## II. ATTORNEY DISQUALIFICATION

Plaintiffs argue that the trial court erred by denying Latif's motion to disqualify Walker as defendants' attorney. We disagree. Without considering whether plaintiffs even have standing to appeal that order, plaintiffs have failed to allege any error requiring reversal.

## A. STANDARD OF REVIEW AND APPLICABLE LAW

"We review the factual question of the existence of a conflict of interest that disqualifies counsel for clear error, but review de novo the application of 'ethical norms' to a decision whether to disqualify counsel." *Lamont Community Church v Lamont Christian Reformed Church*, 285 Mich App 602, 613; 777 NW2d 15 (2009). "Factual findings are clearly erroneous only if this Court is 'left with a definite and firm conviction that a mistake was made.' " *Id*., quoting *Avink v SMG*, 282 Mich App 110, 116; 761 NW2d 826 (2009).

"MRPC 1.7(a) and 1.9 prohibit the representation of a client where that representation is directly or materially adverse to another client or former client." *Lamont Community Church*, 285 Mich App at 614. "Under MRPC 1.13, lawyers 'employed or retained to represent an organization represent[] the organization as distinct from its directors, officers, employees, members, shareholders, or other constituents.' " *Id*. "The party seeking disqualification bears the burden of demonstrating specifically how and as to what issues in the case the likelihood of prejudice will result." *Rymal v Baergen*, 262 Mich App 274, 319; 686 NW2d 241 (2004), quoting *Kubiak v Hurr*, 143 Mich App 465, 471; 372 NW2d 341 (1985).

## B. ANALYSIS

Plaintiffs allege that Walker should have been disqualified for his prior representation of Latif, claiming that Walker's representation of defendants was "directly or materially adverse to [a] . . . former client." *Lamont Community Church*, 285 Mich App at 614. Walker's representation of Latif, however, was not a representation of VBWL. See *id*. Because Latif was dismissed from the case with prejudice, there was no longer a "former client" of Walker's directly adverse to his representation of defendants in the case. See *id*. This Court in *Lamont Community Church*, 285 Mich App at 614-615, found an argument similar to plaintiffs' to be unpersuasive, reasoning that "[c]orporations exist for the benefit of many groups of people, including other companies or their own shareholders. However, that does not make those groups or shareholders clients of the attorneys who represent the corporations themselves." Thus, adopting *Lamont*'s reasoning, Walker's representation of Latif as an individual did not somehow transform VBWL, a separate corporate entity, into a former client of Walker, even though Latif was the sole member of VBWL. *Id*. Consequently, any potential error by the trial court in permitting Walker to continue representing defendants when Latif was still involved as a third-party defendant was inherently cured by Latif's dismissal from the case. *Id*.

Further, plaintiffs fail to identify any information or argument available only to Walker that any other attorney could not have raised. This is not surprising considering that Walker's representation of Latif occurred about eight years before the instant litigation began. Although the language used by Walker in an alleged e-mail to Shamama before Latif was involved in the case was troubling, Walker's assertion that the lease between Shamama and VBWL was generated solely to increase damages is an argument any reasonable attorney in Walker's position would make. Given the absence of any record evidence that Walker ever represented plaintiffs, was privilege to any information regarding VBWL's lease with Shamama, or had any other information of significance regarding the case, plaintiffs failed to show that they suffered any harm by Walker's representation of defendants.

Plaintiffs fail to "bear[] the burden of demonstrating specifically how and as to what issues in the case the likelihood of prejudice will result." *Rymal*, 262 Mich App at 319, quoting *Kubiak*, 143 Mich App at 471. Thus, plaintiffs have not alleged any error requiring reversal.

## III. ATTORNEY MISCONDUCT

Plaintiffs also allege that the trial court erred in denying their motion for a new trial due to Walker's misconduct during the trial. Because any alleged misconduct committed by Walker was either waived, harmless, or entirely without merit, we disagree with plaintiffs.

## A. STANDARD OF REVIEW AND APPLICABLE LAW

"We review for an abuse of discretion a trial court's general conduct of a trial[,]" as well as a trial court's decision regarding a motion for a new trial. *Zaremba Equip, Inc v Harco Nat Ins Co*, 302 Mich App 7, 21; 837 NW2d 686 (2013). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Id*.

This Court and the Michigan Supreme Court have discussed the proper process for reviewing a claim of attorney misconduct:

When reviewing an appeal asserting improper conduct of an attorney, the appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted. Tainted verdicts need not be allowed to stand simply because a lawyer or judge or both failed to protect the interests of the prejudiced party by timely action. [*Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 290; 602 NW2d 854 (1999) (emphasis removed), quoting *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 102-103; 330 NW2d 638 (1982).]

Generally, "[a]n attorney's comments do not [] constitute grounds for reversal unless they reflect a deliberate attempt to deprive the opposing party of a fair and impartial proceeding." *Zaremba Equip*, 302 Mich App at 21. "Reversal is required only where the prejudicial statements of an attorney reflect a studied purpose to inflame or prejudice a jury or deflect the jury's attention from the issues involved." *Hunt v Freeman*, 217 Mich App 92, 95; 550 NW2d 817 (1996).

## B. ANALYSIS

Plaintiffs first challenge comments made by Walker during his opening statement and closing argument alleging that plaintiffs were not being truthful. An attorney is permitted to argue or suggest that a witness may not be being truthful when witness credibility is a pertinent issue in the case. *Zaremba Equip*, 302 Mich App at 25-26. An attorney is also permitted to point out the potential bias of certain witnesses and to argue that "his witness speaks the truth while the other presents a fabrication." *Reetz*, 416 Mich at 108-109.

During his opening statement, Walker referred to the lease between Shamama and VBWL as a "fake" lease or "so called" lease. During his closing argument, Walker repeatedly referred to Latif as a "snake oil salesman." One of the main issues during trial was whether defendants or plaintiffs were telling the truth regarding the events that occurred. The only claims that went to trial were whether defendants breached their contract with Shamama, interfered with the lease between Shamama and VBWL, or converted fixtures that were allegedly owned by Shamama. Defendants' theory of the case was, first, that plaintiffs purposely kept defendants from vacating the subject property before the lease expired, so they were excused from any breach of the contract or alleged tortious interference; second, that defendants actually owned the fixtures so they could not possibly convert them; and third, there was no contract or business expectancy between Shamama and her son's company, VBWL, with which to interfere. Plaintiffs presented evidence and argument to the contrary, i.e., that their witnesses were telling the truth about the lease, about the alleged conversion, and relating to the tortious interference with that lease. Walker's references to plaintiffs being "snake oil salesmen" and that they had a fake lease, merely suggested to the jury that plaintiffs were not being truthful, in comparison to his clients. Given the issues being litigated, with witness credibility being the crux of the case,

-5-

Walker did not commit error in advocating that the plaintiffs were presenting the jury with a fabrication while his clients were telling the truth. *Reetz*, 416 Mich at 108-109; *Zaremba Equip*, 302 Mich App at 25-26. In *Zaremba*, this Court found that an attorney had not committed misconduct when he called the opposing witnesses "liars" and stated that they "lied." Thus, we hold similarly regarding Walker's statements, which amount to less than calling plaintiffs outright liars. See *id*.

Walker also was permitted to insinuate that Latif's lease with Shamama, via his company VBWL, was only created to accrue further damages when defendants inevitably breached the contract. See *Reetz*, 416 Mich at 108-109. In essence, Walker's assertion was that Latif was a biased witness, attempting to gain additional damages in favor of his mother, Shamama, and his business, VBWL. Pointing out the potential bias of a witness, and the effect of that bias on the witness's testimony, is not misconduct. *Id*. Furthermore, even if there was any error regarding Walker's statements about that lease, there is nothing in the record to indicate that plaintiffs were prejudiced thereby because the jury specifically found that there was a lease between Shamama and VBWL, but only that neither party suffered any damages. Thus, any alleged error was harmless and does not require reversal. *Hunt*, 217 Mich App at 95.

Plaintiffs next challenge Walker's statement to the trial court that Avin Yelda, a witness for defendants, was a corporate officer and therefore not subject to a sequestration order, when, in fact, his testimony revealed that he was not a corporate officer. Avin was not sequestered and was allowed to hear witness testimony before his own testimony. Assuming without deciding that Walker knew Avin was not a corporate officer when the trial began and lied so that Avin could gain an advantage as a witness, plaintiffs' failure to provide any proof that they were harmed precludes any relief. *Badalamenti*, 237 Mich App at 290.

The sequestration of witnesses is left to the trial court's discretion and violations of that order require proof of prejudice before requiring reversal. *Coburn v Goldberg*, 326 Mich 280, 284; 40 NW2d 150 (1949); *In re Jackson*, 199 Mich App 22, 29; 501 NW2d 182 (1993). This Court has explained the law regarding sequestration of witnesses:

> The purposes of sequestering a witness are to "prevent him from 'coloring' his testimony to conform with the testimony of another," and to aid "in detecting testimony that is less than candid." Additionally, the United States Supreme Court has recognized three sanctions that are available to a trial court to remedy a violation of a sequestration order: "(1) holding the offending witness in contempt; (2) permitting cross-examination concerning the violation; and (3) precluding the witness from testifying." Although usually stated in the context of a defense witness's exclusion in a criminal case, courts have routinely held that exclusion of a witness's testimony is an extreme remedy that should be sparingly used. [*People v Meconi*, 277 Mich App 651, 654; 746 NW2d 881 (2008) (internal citations omitted).]

Thus, one such remedy for a violation of a sequestration order is to allow the opposing party to cross-examine the witness regarding the violation and thereby alert the jury to the issue. See *id*.

Considering the foregoing law, had the trial court attempted to cure any prejudice arising out of Walker's alleged error, the solution would have been to allow plaintiffs to cross-examine Avin on his violation of the sequestration order. See *Meconi*, 277 Mich App at 654. The record shows that plaintiffs discovered that Avin violated the order during cross-examination, and subsequently asked several questions regarding Avin's status with 6 B's. Plaintiffs' questioning of Avin also informed the jury that Avin had the benefit of hearing all the previous testimony before offering his own version of events. Thus, because plaintiffs were permitted to cross-examine Avin on his violation of the order, including alerting the jury to the possible benefits of being in court for the testimony of other witnesses, and absent any other evidence provided by plaintiffs that they were somehow prejudiced by Avin's testimony, any possible harm to plaintiffs was obviated during trial. See *id.*

Plaintiffs' failure to show any prejudice arising out of Walker's alleged misconduct, which led to Avin's testimony after hearing all other witnesses testify, provides no reason for us to reverse. *Coburn*, 326 Mich at 284; *Badalamenti*, 237 Mich App at 290.

Plaintiffs also contend that Walker committed misconduct during his questioning of Latif, Walker's former client. Plaintiffs assert that Walker inappropriately raised the issue of Latif's alleged litigious history. The record is clear, however, that plaintiffs objected to the questioning by Walker and the objection was sustained. Plaintiffs did not seek any other relief from the trial court, such as a mistrial. Our Supreme Court has held that, when a party's objection is sustained and the party seeks no other redress of the alleged issue, any error has been waived. See *People v Carter*, 460 Mich 206, 219-220; 612 NW2d 144 (2000).[3] Thus, plaintiffs have waived any error arising out of this exchange. See *Carter*, 460 Mich at 219-220.

Additionally, the trial court instructed the jurors that they were not to consider any evidence where an objection to the admission of that evidence had been sustained. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *Zaremba Equip*, 302 Mich App at 25 (quotations marks omitted). Therefore, any error in Walker's questioning was harmless, considering that the trial court properly responded to them by sustaining plaintiffs' objection, and the jury was explicitly instructed not to consider such evidence. See *id.*; see also *Hunt*, 217 Mich App at 95. Considering the alleged error was harmless and any further relief for that error was waived, plaintiffs have not provided any grounds for a new trial. *Id.*

Plaintiffs next allege that Walker committed misconduct by referring to the fact that he was Latif's former attorney. However, the record actually reveals that it was plaintiffs' attorney and Latif that alerted the jury to the fact that Walker previously represented Latif. "It is settled that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003). A party is not permitted to create an error, "harbor [that] error at trial[,] and then use [it] as an appellate parachute[.]" *People v Szalma*, 487

---

[3] See, e.g., *Silas v Secura Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued October 10, 2017 (Docket No. 331169), p 3.

Mich 708, 726; 790 NW2d 662 (2010). Consequently, plaintiffs were not permitted to create the error, presuming there was one, and then harbor it to use as an appellate parachute. See *Lewis*, 258 Mich App at 210. Moreover, plaintiffs' claim is one of attorney misconduct by Walker, but the record cited by plaintiffs, as transcribed, shows that Walker did not raise the issue of any prior representation. Considering that Walker did not raise the issue in front of the jury, plaintiffs have failed to identify any misconduct on the part of Walker.

Thus, because plaintiffs have failed to raise any actions by Walker that could amount to misconduct, we hold that this portion of plaintiffs' claim on appeal is waived and without merit. *Id*.

Plaintiffs next allege that Walker's misconduct continued during the cross-examination of Latif, when Walker asked Latif about his Chaldean heritage and the wealth of his family. Plaintiffs are correct that attorneys are not permitted to insert the issue of race in a case in a manner that "reflect[s] a deliberate strategy to incite the jurors to" focus on race instead of the facts of the case. *Powell v St John Hosp*, 241 Mich App 64, 79-80; 614 NW2d 666 (2000).

Once again, however, as reflected in the record, Latif acknowledged that he brought up his Chaldean heritage during direct examination. As noted, "error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence." *Lewis*, 258 Mich App at 210. Latif's decision to bring up his Chaldean heritage during direct examination by plaintiffs' counsel resulted in plaintiffs creating the error they now seek to use as a means to gain a new trial. This Court will not permit plaintiffs to harbor the error they created as an "appellate parachute." *Szalma*, 487 Mich at 726; *Lewis*, 258 Mich App at 210.

Additionally, even if Walker brought up the fact that Latif was Chaldean without plaintiffs acting first, the record shows that his manner of doing so was not improper. An attorney commits misconduct by using the issue of race as a strategy to distract the jury from the facts of the case. See *Powell*, 241 Mich App at 79-80. However, Walker only brought up Latif's Chaldean heritage as an attempt to discover why Latif was so involved in his parents' business, to wit, that Chaldean children believe they should take care of their parents. Latif even answered the question in a positive manner, stating that Chaldean children often do take care of their parents, but that it was a Middle Eastern ideal to which he did not hold himself. Those questions by Walker reveal no attempt to evoke passion and prejudice from the jury and to ignore the facts of the case. If anything, Latif's Chaldean heritage was presented in a positive light in relation to facts relevant to the case.

Thus, not only was the issue waived due to plaintiffs' first raising it, but there was also no misconduct by Walker. See *Powell*, 241 Mich App at 79-80; see also *Hunt*, 217 Mich App at 95.

We next address Walker's questions regarding Shamama and Latif's familial wealth and that Shamama's other sons purchased Boblo Island.[4] We need not reach the issue of whether those questions amounted to misconduct because plaintiffs waived the issue when they objected to the questions, the objections were sustained, and plaintiffs did not ask for any additional relief. *Carter*, 460 Mich at 219-220. Not only did the trial court sustain the objections, but it instructed the jury before deliberations that the jury was not to consider evidence to which an objection to its submission had been sustained. Because jurors are presumed to follow their instructions, plaintiffs cannot show any harm from the alleged error. See *Zaremba Equip*, 302 Mich App at 25. Thus, plaintiffs' claim that Walker committed misconduct by asking about the familial wealth was both waived and harmless, thereby obviating any need for reversal. See *Badalamenti*, 237 Mich App at 290.

Because plaintiffs failed to prove that any alleged "prejudicial statements [by Walker] reflect[ed] a studied purpose to inflame or prejudice a jury or deflect the jury's attention from the issues involved," there is no error requiring reversal and a new trial, and therefore, the trial court did not abuse its discretion in denying the motion for a new trial. *Hunt*, 217 Mich App at 95.

Affirmed.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan

---

[4] Boblo Island is an island in the Detroit River that was the site of the now defunct Boblo amusement park that was in business from 1898 to 1993. Haddad, *The story of Boblo Island*, <https://www.clickondetroit.com/features/the-story-of-boblo-island> (accessed December 28, 2017).