CALVARY PRESBYTERIAN CHURCH v PRESBYTERY OF LAKE
HURON OF THE UNITED PRESBYTERIAN CHURCH IN THE
UNITED STATES OF AMERICA

Docket No. 72497. Submitted August 14, 1984, at Lansing.—Decided
January 6, 1986.

The Calvary Presbyterian Church was begun in 1941 as a mission
of the First Presbyterian Church of Flint. In 1944, the members
of the mission organized themselves as the Calvary Presbyte-
rian Church of Flint (Church), an ecclesiastical corporation,
agreeing to worship and labor together according to the disci-
plines, rules and usage of the United Presbyterian Church in
the United States of America (Denomination) as from time to
time was authorized and declared by the General Assembly.
The Church formed a building committee, and in raising funds
took a loan from the Denomination and gave a mortgage on the
real estate as security. Upon repayment, the Denomination
deeded the real estate back to the Church. In the 1970's, a
majority of the members of the Church became unhappy with
the evolving social and political activities and policies of the
Denomination and began to consider seceding from the Denom-
ination, accompanied by the real estate. The Denomination was
informed of the plans of the Church to hold a meeting to vote
on the withdrawal and established an administrative commis-
sion to replace the Board of Directors of the Church and take
over the governing of the Church and its property. The Church
filed suit against the Presbytery of Lake Huron of the United
Presbyterian Church in the United States of America in Gene-
see Circuit Court seeking declaratory relief as to the ownership
of the real property and injunctive relief in the interim to
prevent the Denomination from acting to interfere with the
Church's withdrawal. The court issued an order allowing both

REFERENCES

Am Jur 2d, Appeal and Error §§ 839.

Am Jur 2d, Religious Societies §§ 36 et seq.

Modern view as to determination of property rights between local
church and parent church body. 52 ALR3d 324

Change of denominational relations or fundamental doctrines by
majority faction of independent or congregational church as
ground for award of property to minority. 15 ALR3d 297

the Church and the administrative commission to meet and make decisions, but restrained them from acting on those decisions. The Church members met and voted 287 to 26 to secede from the Denomination. Those members continued to worship together and use the name Calvary Presbyterian Church, but terminated their relationship with the Denomination and affiliated with another denomination, the Evangelical Presbyterian Church. The loyal minority continued to worship as a church body under the authority of the Denomination. The matter was subsequently tried by the court, which ruled in favor of the Denomination, making a finding that the Denomination had been judicially determined to be hierarchical in nature, and declared that the property was held in an implied trust for the Denomination and that the Church was not the beneficial owner, despite the unqualified language of the deed, Thomas C. Yeotis, J. The Church appealed. *Held:*

1. The trial court correctly found that the Denomination is hierarchical even though it possesses a representative form of government, that the decisions of that government are not reviewable by the state, and that the decision of the Denomination to retain the real estate upon the withdrawal of the Church is binding upon the courts.

2. The fact that the Denomination earlier allowed the Church to sell a house held in a fashion similar to the property at issue does not forestall the Denomination from now asserting its right to claim and retain ownership of the remaining Church property.

Affirmed.

1. EQUITY — APPEAL — FINDINGS OF FACT.

The Court of Appeals reviews equity cases *de novo* but will not disturb the trial court's findings unless convinced that those findings are clearly erroneous or unless the Court of Appeals would have reached a different result had it been in the trial court's position.

2. RELIGIOUS CORPORATIONS AND ASSOCIATIONS — CHURCH PROPERTY.

A subordinate congregation or a faction thereof which secedes from a hierarchical church has no right to retain church property where the governing body of the general church has determined that the seceding faction is no longer the congregation or its legitimate successor for which the property was originally purchased or obtained.

3. RELIGIOUS CORPORATIONS AND ASSOCIATIONS — CHURCH PROPERTY.

The fact that a hierarchical church did not interfere with the

actions of a local congregation in selling a piece of property belonging to the church does not estop the hierarchical church from later asserting its right to claim and retain ownership of the remaining church property.

*Hess, Brown & Hess, P.C.* (by *R. Ben Brown* and *Daniel B. Hess),* for plaintiff.

*Harold A. Draper,* for defendant.

Before: CYNAR, P.J., and WAHLS and S. T. FINCH,* JJ.

S. T. FINCH, J.

### FACTS

The plaintiff-appellant Calvary Presbyterian Church (hereinafter referred to as the Church) was begun in 1941 as a mission of the First Presbyterian Church of Flint. In 1944, the members of the mission organized themselves as the Calvary Presbyterian Church of Flint, an ecclesiastical corporation, agreeing to "worship and labor together according to the disciplines, rules and usage of the [United] Presbyterian Church in the United States of America [represented here by our defendant, hereinafter known as the Denomination] as from time to time authorized and declared by the General Assembly". (Articles of Incorporation.)

Later, the Church formed a building committee, and in raising funds took a loan from the Denomination and gave a mortgage on the real estate as security. Upon repayment, the Denomination deeded the real estate back to the Church.

Still later, in the seventies, a majority of the members of the Church became unhappy with the evolving social and political activities and policies

---

* Circuit judge, sitting on the Court of Appeals by assignment.

of the Denomination, believing that these activities and policies were contrary to the underlying founding tenets of the Presbyterian faith. In essence, the Church felt that the Denomination had gone astray, and therefore began to consider seceding from the Denomination, accompanied by the real estate.[1] The Denomination was notified of the plans of the Church to hold a meeting to vote on the withdrawal and, according to the procedures set forth in the Book of Order (the rules of the Denomination), established an Administrative Commission to replace the Session[2] and take over the governing of the Church and its property.[3]

---

[1] It should be noted that this sort of situation was developing with some frequency elsewhere, both in this Denomination and others, since, in *Presbyterian Church in the United States v Mary Elizabeth Blue Hull Memorial Presbyterian Church,* 393 US 440; 89 S Ct 601; 21 L Ed 2d 658 (1969), and in *Jones v Wolf,* 443 US 595; 99 S Ct 3020; 61 L Ed 2d 775 (1979), the Supreme Court had departed from a long-standing rule on how church disputes are decided. These new decisions created the possibility that a church which secedes from a hierarchical denomination might have the right to take real estate with it if titled in fee simple to the church. Because of this trend, the Denomination had begun to move toward requiring that all local real estate be held in express trust for the Denomination. Prior to these cases, the rule, without exception, was that if a denomination had a "hierarchical" structure, the civil law would not interfere in its affairs, and would defer to the authority, regularly exercised, of the higher office of the denomination to determine matters in dispute and to control church real estate under a theory of implied trust. Then, if the majority of the members of a church exercised their freedom to withdraw, the property would stay with the denomination, if the denomination chose to keep it. The only question under this rule is whether a denomination is organized in a hierarchical structure with a central governing body which has regularly acted within its powers, or whether it is organized in the looser "congregational" structure, with all governing powers and property ownership remaining in the individual churches.

[2] Session is the term used to denote the equivalent of the Board of Directors of the Church corporation.

[3] The Church never attempted to appeal this action of the Presbytery through the Denomination's ascending chain of government (the judicatories), either before or after it affiliated with another denomination, the Evangelical Presbyterian Church, at which point it lost its rights of membership in the Denomination, including access to administrative remedies.

The Church filed this action asking for declaratory relief as to the ownership of the real property and injunctive relief in the interim to prevent the Denomination from acting to interfere with the Church's withdrawal. Each party petitioned the court to restrain the other from acting. The court issued an order allowing both the Church and the Administrative Commission to meet and make decisions, but restrained them from acting on these decisions. The Church met and voted 287 to 26 to secede from the Denomination. Those members continued to worship together and use the name Calvary Presbyterian Church, but terminated their relationship with the Denomination and have affiliated with another denomination, the Evangelical Presbyterian Church. Under the aegis of the Administrative Commission, the loyal minority continues to worship as a church body under the authority of the Denomination.

Subsequently, the matter was tried by the court, which eventually ruled in favor of the Denomination, making a finding that the Denomination had been judicially determined to be hierachical in *Jones v Wolf,* 443 US 595; 99 S Ct 3020; 61 L Ed 2d 775 (1979), and then, following the standard set forth in *Bennison v Sharp,* 121 Mich App 705; 329 NW2d 466 (1982), *lv den* 417 Mich 1100.13 (1983), declared that the property was indeed held in an implied trust for the Denomination and that the Church was not the beneficial owner, despite the unqualified language of the deed. It is from this decision that the Church appeals.

In equity cases, this Court reviews *de novo* but we will not reverse the trial court unless we are convinced that the court's findings are clearly erroneous, *Coffee-Rich, Inc v Dep't of Agriculture,* 1 Mich App 225, 228; 135 NW2d 594 (1965), or we would have reached a different result had we

occupied the court's position. *Thom v Rasmussen,* 136 Mich App 608, 612; 358 NW2d 569 (1984); *Cascade Twp v Cascade Resource Recovery, Inc,* 118 Mich App 580, 584; 326 NW2d 500 (1982).

## LAW & DISCUSSION

The issue is narrow: Did the trial court err in applying the principles of *Bennison, supra,* to this dispute?

We hold that it did not. In our *de novo* review of the entire record, we find ample evidence to support the trial court's findings that the Denomination was a hierarchical church, and that therefore the principles of *Bennison* do apply. Since we would not have reached a different result, we find no reason to disturb the conclusions of the trial court, and no reason to depart from the reasoning of this Court as enunciated in *Bennison* rejecting the use of the "neutral principles" test[4] to determine church ownership in the event a church withdraws from a hierarchical denomination.

### I

The Church contends that the lower court should have applied the "neutral principles" test, as permitted by *Jones, supra,* to the dispute, and asks this Court to do so, arguing that *Bennison* does not apply because the Denomination in fact is neither strictly hierarchical nor strictly congregational, in that the power of the governing body flows upwards to it from the individual church members. The Church has argued that the traditional method of classifying churches as either

---

[4] In using the so-called "neutral principles" test, the court applies the same principles of law as would be applied to nonreligious organizations and therefore will not declare an implied trust based solely on deference to the authority and rules of the denominational hierarchy.

congregational or hierarchical is, therefore, insufficient for analysis of this case. Thus, the Church reasons, since the members of this Presbyterian denomination have given the power to the Denomination, which governs in a representative fashion, it should not be considered a true hierarchy and allowed to adjudicate its own disputes internally. This analysis fails when we analogize to our own national government. It is certainly one in which power is granted to the government by the people, but once granted, that representative government then has whatever power the law gives it—unless and until the law is changed. The people cannot refuse to follow duly enacted laws or executive decisions because they feel the current government is not true to the tenets of the founding fathers or the current electorate. We can only work to replace, through election, the current members of government with those holding beliefs more acceptable to us, and hence willing to enact laws and policies more agreeable to us.

In its supplement to the brief, the Church calls the Court's attention to the decisions of *Presbytery of Elijah Parish Lovejoy v Jaeggi,* 682 SW2d 465 (Mo, 1984), *cert den* — US —; 105 S Ct 2361; 86 L Ed 2d 262 (1984),[5] and *First Presbyterian Church of Schenectady v United Presbyterian Church in the United States of America,* 62 NY2d 110; 464 NE2d 454 (1984). In both of these cases, the appellate courts of sister states have considered *Jones, supra,* and have applied the neutral principles test to *this* denomination, without reference to the criteria of hierarchical/congregational structure. As set out in *Presbytery of Beaver-Butler of the*

---

[5] At the time the Church included *Presbytery of Elijah Parish Lovejoy v Jaeggi* in its supplement, the case had been decided by the Missouri Court of Appeals (Docket No. 46810, decided January 31, 1984) and was on appeal to the Missouri Supreme Court, which has since reached the same conclusion.

*United Presbyterian Church in the United States v Middlesex Presbyterian Church,* 507 Pa 255, 263-264; 489 A2d 1317 (1985), at least nine states by now have adopted this method of determining nondoctrinal disputes in hierarchical churches, reasoning that disputes over property are different than doctrinal disputes and may and should be resolved outside church hierarchy.

We see no reason in this case to follow our sister states away from the clear law of this state as pronounced in *Bennison.* Despite the Church's arguments to the contrary, it is clear that this Presbyterian denomination is hierarchical and that the church government had the agreed and declared power to act as it did in replacing the Session with the Administrative Commission and in determining that the seceding Church could not take the real estate with it.

"Thus, under the polity theory, when a subordinate congregation or a faction thereof secedes from a hierarchical church, it has no right to retain church property where the governing body of the general church has determined it is no longer the congregation or its legitimate successor for which the property was originally purchased or obtained."*Bennison, supra,* p 715.

The courts should not look behind the veil of the authority of the internal governmental structure of the Denomination. We find that it would be inappropriate to apply the neutral principles test to determine disputes between people who have agreed, as a part of the establishment of their church, to resolve disputes between themselves within their internal power structure.

Times change, and it must be presumed that the original agreement to be bound by the Denomination's decisions included the possibility that the local Church might not agree with all those deci-

sions. In this case the Denomination apparently changed its outlook and policies between 1941 and 1980. The majority of the members of the Church did not. They were free as individuals to leave the Denomination, but not to depart from the "rules" which the Church had originally agreed to abide by, one of which was that the Denomination could supersede the Church's powers to govern itself by replacing its governing Session in the event of a dispute and that the Administrative Commission could determine to keep the real estate in the possession of the Denomination to the use of the nondeparting members.

Therefore, we hold that the trial court correctly found that the Denomination is hierarchical even though it possesses a representative form of government, that the decisions of that government (here, the Presbytery) are not reviewable by the state and thus the decision of the Denomination to retain the real estate upon the withdrawal of the Church is binding upon the counts.

## II

The Church further argues that the Denomination is estopped from now asserting an implied trust in the real estate when, in the mid-seventies, it allowed the Church, without dispute, to sell a house similarly held.[6] The trial court did not find, nor do we, that this created an estoppel. The fact that the Denomination did not interfere with the actions of the Church in regard to that piece of property does not forestall it from now, during this doctrinal division, asserting its right to claim and

---

[6] According to witness Richard J. Heidtman, one of the withdrawing elders, the property of the Church should not have been sold without the approval of the Denomination. Although he believed this to be true only so long as the Church remained affiliated with the Denomination, there is no authority shown for this limitation on the power of the Denomination in the governing documents.

retain ownership of the remaining Church property.

## Result

For all these reasons, the findings of fact and law contained in the opinion of the trial court of February 28, 1983, and its judgment of June 20, 1983, are affirmed.

Affirmed.