IRISH v TREASURER OF THE STATE OF MICHIGAN

Docket No. 85520. Submitted November 7, 1986, at Grand Rapids. Decided March 3, 1987.

David Irish and other Harbor Springs landowners brought an action in the Emmet Circuit Court against the state treasurer, several state agencies and officials, Birchwood Farms Development Company (BFDC), and others. Plaintiffs sought equitable and declaratory relief, alleging that a residential project proposed by BFDC in West Traverse Township, Emmet County would endanger the air, water and other natural resources of the area because, among other things, BFDC planned to use on-site septic tanks for each lot as the only means of sewage disposal. Following a trial, the court, Allan C. Miller, J., pursuant to the Environmental Protection Act, entered a judgment imposing several conditions restricting the pace of the project's development until a central sewage and water system was constructed. The court's judgment was the subject of numerous amendments which eased the restrictions initially imposed on BFDC. Birchwood Development Company displaced BFDC as defendant and the series of amendments to the court's original judgment culminated in a final modification proposed by Birchwood Development in a motion and approved by the court, Nicholas J. Lambros, J., which the state treasurer and the other state officials and agencies objected to and appealed from. The judgment was finally amended to provide that no central sewage system would be built unless the court, following a hearing upon plaintiffs' petition, finds a "substantial likelihood" that degradation of the groundwater would result from continued development.

The Court of Appeals *held:*

1. The various state officials and agencies who were named as defendants in plaintiffs' action and were charged with the responsibility of enforcing the judgment are aggrieved parties

REFERENCES

Am Jur 2d, Appeal and Error §§ 173, 178-185, 822.

See the annotations in the Index to Annotations under Appeal and Error; Equity.

who may pursue an appeal as of right before the Court of Appeals.

2. Since the trial court had retained jurisdiction to amend its original judgment, Birchwood Development's motion to amend the judgment was not subject to a court rule requiring such motions to be filed within twenty-one days of entry of the judgment and thus was not untimely as appellants had contended.

3. However, the trial court clearly erred in drastically amending the judgment without conducting an evidentiary hearing to determine if the proposed changes will sufficiently protect future buyers and adjoining property owners.

Reversed and remanded for an evidentiary hearing.

1. APPEAL — AGGRIEVED PARTIES — APPEALS AS OF RIGHT — COURT RULES.

A party can appeal as a matter of right from the final judgment of a circuit court only if he is aggrieved; an aggrieved party is one who has an interest in the subject matter of the litigation (MCR 7.203[A]).

2. EQUITY — APPEAL — FINDINGS OF FACT.

The Court of Appeals reviews equity cases de novo but will not disturb the trial court's findings unless convinced that those findings are clearly erroneous or unless the Court of Appeals would have reached a different result had it been in the trial court's position.

*Peter W. Steketee,* for David Irish, John H. Tanton and Henry E. McWhorter.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Thomas J. Emery* and *Gary L. Hicks,* Assistant Attorneys General, for the State Treasurer, the Department of Treasury, the Director of the Department of Public Health, the Director of the Department of State Highways, the Department of State Highways, and the State Highway Commission.

*Ramer & Moore* (by *James T. Ramer*), for Birchwood Farms Golf and Country Club Property Owners Association.

*Burns & Spanos* (by *George D. Spanos*), for Birchwood Development Company.

Before: CYNAR, P.J., and M. J. KELLY and J. A. HATHAWAY,* JJ.

CYNAR, P.J. On May 22, 1985, Emmet Circuit Judge Nicholas J. Lambros entered an amended final judgment, changing the original final judgment which was entered by Judge Allan C. Miller on September 8, 1972, in this Michigan Environmental Protection Act case. The state agency defendants appeal as of right, alleging that the court erred in amending the final judgment.

Sometime prior to April, 1972, the Birchwood Farms Development Company (BFDC) commenced plans for the development of a residential housing project on 1,828 acres located in West Traverse Township, Emmet County, Michigan. As part of this development, BFDC contemplated approximately 858 single-family lots and 595 cluster housing units, and included roads, a golf course, a clubhouse, a tennis complex, and other related amenities. This appeal centers on four plats, Plat Nos. 1 through 4, and concerns the type of sewage disposal system which should be constructed at the Birchwood Farms project.

On April 1, 1972, a group of Harbor Springs landowners filed suit for equitable and declaratory relief against all the defendants except the Birchwood Farms Golf and Country Club Property Owner's Association under the Environmental Protection Act, MCL 691.1201 *et seq.;* MSA 14.528(201) *et seq.* The complaint alleged that the proposed residential project would endanger the air, water, and other natural resources of the area because among other things the developers planned to use individ-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ual on-site septic tanks for each lot as the only means of sewage disposal. At the end of the trial, the court made findings of fact and conclusions of law, and on September 8, 1972, the court entered the final judgment. In the judgment, the court imposed conditions upon BFDC's development of Birchwood Farms under § 4 of the Environmental Protection Act, MCL 691.1204; MSA 14.528(204), which allows a court to impose conditions upon developers to protect the air, water, and other natural resources or the public trust therein from pollution, impairment or destruction. One of the conditions imposed by the court was that homes could be built on only forty percent of the lots in Plat No. 1 and on only ten percent of the lots in the three other plats before a central sewage and water system was constructed. Another condition was that BFDC set aside an escrow account consisting of fifteen percent of the down payment it received from the sale of lots, to pay for the construction of this central sewage and water system. At the end of the judgment, the court ordered that it would retain jurisdiction for the purpose of entering any additional orders as may be necessary to implement the judgment.

On September 29, 1972, BFDC filed a motion to alter or amend the final judgment or, in the alternative, for a new trial. BFDC sought a reduction of the fifteen percent escrow deposit requirement. On December 26, 1972, the court signed an order granting BFDC's motion and ordered that BFDC would have to deposit only a maximum of $1,000 per lot into the escrow account.

The next amendment to the final judgment was made in 1976. BFDC filed a motion to modify the final judgment requesting the court to allow it to build houses on forty percent of the lots on Plat Nos. 2 and 3 before a central sewage system was

constructed, rather than the ten percent allowed by the final judgment. (A central water system had been constructed, but a central sewage system had not.) The reason BFDC wished to have the final judgment amended this time was because many lots in Plat Nos. 2 and 3 had already been sold, and the number of lot owners who had built homes on the lots on those plats was close to the ten percent limit imposed by the court's final judgment. Construction of the central sewage system was economically infeasible at that time, and if the court did not allow forty percent of the lots of Plat Nos. 2 and 3 to be built upon before construction of the central sewage system, sales of lots in those plats would decline drastically. On November 8, 1976, the court granted BFDC's motion, and ordered that the final judgment be amended to provide that the central sewage system was to be constructed when eighty-nine of the total number of lots in Plat Nos. 1, 2, 3 and 4 had been built upon.

The next amendment to the final judgment was made in 1978. On August 1, 1978, plaintiffs, intervening plaintiffs, BFDC, and state agency defendants stipulated to amend the final judgment. The stipulation provided that certain lots of Plat Nos. 1 through 3 were to be designated "groundwater sensitive lots," and that only twenty-six more homes with on-site septic facilities would be allowed to be built on these lots. Single-family homes using individual on-site septic systems could be constructed on Plat Nos. 2, 4 and 5, or any subsequent plats, on lots 54 through 80 of Plat No. 1, and on lots 290 through 300 of Plat No. 3, until forty percent of the total number of such lots had been built upon.

On December 6, 1984, Birchwood Development Company, which had been substituted as a defen-

dant in place of BFDC on September 12, 1984, moved for authorization to withdraw funds and for amendment of the final judgment once more, pursuant to a stipulation. The withdrawal of funds was to finance a complete engineering study, report, and proposal for a groundwater intercept system which could possibly replace the central sewage system which had not yet been constructed. On January 3, 1985, the court signed the order granting the motion, authorizing $60,000 to be removed from the escrow fund.

On May 10, 1985, the amendment which led to the instant appeal was sought. On that date, all of the plaintiffs except Earl R. Larson, all of the intervening plaintiffs, and the Birchwood Development Company moved to have the court enter an order amending the final judgment in accordance with an agreement to amend the final judgment executed by the parties. The stipulation provided that the signatories had come up with an alternative to the central sewage system. This alternative was called the Collection and Treatment System. In the stipulation, the signatories agreed that this system satisfied the plaintiffs' concern for groundwater contamination. The stipulation further set forth the proposed steps to be taken to implement the system. Essentially, the stipulation provided that the plaintiffs had to petition the court, and if the court found after a hearing that there was a "substantial likelihood" that degradation of the groundwater would result through continued development of the project, the court would order the installation of the system. It appears that as long as water was not found to be polluted, the Collection and Treatment System would not have to be built. The stipulation provided that all building restrictions imposed by the court upon Birchwood Development Company in the final judgment

were to be removed. The stipulation also provided that if the plaintiffs did not petition for implementation of the new system within five years after homes had been constructed on 120 of the groundwater-sensitive lots, or, in the alternative, within twenty years from the date of the stipulation, neither the Collection and Treatment System nor a central sewage system would have to be constructed. If a sewage treatment and collection system is not constructed then the sewer and water fund, which had a balance of $657,305.72 as of March 31, 1985, would be distributed; two-thirds to Birchwood Development Company and one-third to original plaintiffs and Birchwood Property Owners Association. All the Emmet County governmental agencies subsequently also stipulated to the entry of the order.

The state agency defendants opposed the motion by filing a response. They objected that the motion was not timely under MCR 2.611(B). They also objected that the procedure for implementing the Collection and Treatment System was impractical, since it required plaintiffs to petition the court to conduct a trial to determine whether water contamination was caused by the project. They argued that there was no assurance that the system would ever be constructed since the plaintiffs were not required to petition the court.

On May 22, 1985, despite the state agency defendants' objections, the court granted the motion and entered an "Amended Final Judgment" in accordance with the stipulation. The state agency defendants appeal as of right.

On appeal Birchwood Development Company contends that the state agency defendants are not "aggrieved parties" entitled to appeal. We disagree.

A party to an action may appeal as of right

provided the party is an "aggrieved party." The Michigan Court Rules provide that: "The court has jurisdiction of an appeal of right filed by an aggrieved party . . . ," MCR 7.203(A), formerly GCR 1963, 806.1. Our Supreme Court has held that a party is aggrieved by a judgment if the party has an interest in the subject matter of the litigation. *In re Critchell Estate,* 361 Mich 432, 448; 105 NW2d 417 (1960). The definition will vary according to the type of case involved. *Security Ins Co of Hartford v Daniels,* 70 Mich App 100, 105; 245 NW2d 418 (1976).

The state agency defendants are parties to the action since they were designated in the complaint as defendants. The question is whether they are "aggrieved" for purposes of MCR 7.203(A). The original final judgment authorized the state and local government agencies to enforce the terms of the judgment. Thus any future amendment to the judgment would ultimately affect the state agencies because they were charged with enforcing the original judgment.

Defendants'-appellants' first issue on appeal is whether the May 10, 1985, motion to amend the final judgment was timely filed. They contend that a motion to amend a final judgment must be made pursuant to MCR 2.611(B), formerly GCR 1963, 527.5, which requires the motion to be filed within twenty-one days of judgment.

We are not persuaded that MCR 2.611(B) rules this case. It states: "A motion for a new trial made under this rule or a motion to alter or amend a judgment must be filed and served within 21 days after entry of the judgment." In the instant case, however, the trial court retained jurisdiction in the judgment "for the purpose of entering such additional orders as may be required to implement the Judgment." The trial court knew, because of

the nature of the judgment, that implementation would take years, therefore, under general equitable powers the trial court could properly amend the order thirteen years later. Thus, the motion to amend was timely.

Defendants'-appellants' last contention is that the trial court clearly erred in amending the final judgment. We agree.

During the original trial of this matter in 1972 the trial judge heard seven full days of testimony and had the benefit of authorities in civil engineering, epidemiology, traffic, geology, hydrogeology, microbiology, hydraulics and architecture. In contrast, before drastically amending the judgment, the new trial judge heard only oral argument and received a conclusory affidavit from the president of the development company.

Admittedly, after thirteen years the original judgment may have proven to have inaccurately predicted future conditions. However, because there is nothing in the record below to prove that a central sewage system should not now be built, we hesitate to lightly throw aside the careful findings of Judge Miller.

In equity cases, this Court reviews de novo, but will not reverse the trial court unless convinced that the court's findings are clearly erroneous or that this Court would have reached a different result had it occupied the trial court's position. *Calvary Presbyterian Church v Presbytery of Lake Huron of the United Presbyterian Church in the United States of America,* 148 Mich App 105, 109-110; 384 NW2d 92 (1986), lv den 425 Mich 863 (1986). We find that the trial court's action in amending the final judgment without an evidentiary hearing was clearly erroneous and we remand for a hearing to determine if the proposed changes will sufficiently protect future buyers and

adjoining property owners. We do not retain jurisdiction.

Reversed and remanded.