CHABAD-LUBAVITCH OF MICHIGAN v SCHUCHMAN

Docket No. 312037. Submitted May 13, 2014, at Lansing. Decided May 22, 2014, at 9:00 a.m. Leave to appeal sought.

Chabad-Lubavitch of Michigan (an ecclesiastical organization) brought an action in the Oakland Circuit Court against Dov Schuchman, Ken Kohn, Dorene Sobczak, and others, including the Sara Tugman Bais Chabad Torah Center of West Bloomfield (the Center), arising out of a property dispute over property titled in the Center's name. The dispute began in 1995. Plaintiff maintained that defendants were part of the Chabad-Lubavitch religious hierarchy and that the property had to be titled in plaintiff's name pursuant to Chabad-Lubavitch religious doctrine and polity. Defendants asserted that no religious or legal doctrine required them to transfer the title of their property and that the hierarchy did not control defendants' financial or property interests. The dispute ultimately resulted in five different ecclesiastical decisions by various rabbinic panels, all of which concluded that the property should be titled in plaintiff's name and that transfer of the title should be undertaken as soon as possible. On December 24, 2009, plaintiff received permission from the highest ecclesiastical authority to file a civil lawsuit and filed the lawsuit on April 17, 2012. The court, Rae Lee Chabot, J., denied plaintiff's motion for summary disposition and granted defendants' motion for summary disposition. Plaintiff appealed.

The Court of Appeals *held*:

1. Plaintiff argued that the trial court erred by granting summary disposition under MCR 2.116(C)(7) on the basis of its conclusion that the applicable statutes of limitations barred plaintiff's claims. Plaintiff's complaint (1) requested specific performance of what it termed an "arbitration contract" by which defendants agreed to be bound by the decision of a rabbinic panel (6-year period of limitations), (2) requested a declaratory judgment that Chabad-Lubavitch is a hierarchical ecclesiastical body, that the Center is subordinate, and that Chabad-Lubavitch has the right to ownership and control of the property (6-year period of limitations), (3) requested a determination of interests in land under MCL 600.2932 and MCR 3.411 (15-year period of limita-

tions), and (4) alleged trespass on the basis of defendants' continued use of the property (3-year period of limitations). Under MCL 600.5827, a period of limitations runs from the time the claim accrues, which is when the wrong on which the claim is based was done regardless of the time when damage results. The doctrine of equitable tolling, however, can alter the accrual date, and at issue in this case was whether the applicable limitations periods were equitably tolled while the parties engaged in ecclesiastical dispute resolution proceedings.

2. The trial court erred by granting summary disposition in defendants' favor under MCR 2.116(C)(7). When dispute resolution procedures are mandatory, the applicable period of limitations is tolled during the exhaustion of the mandatory procedure. Specifically, Michigan caselaw has recognized the necessity of exhaustion of religious dispute resolution remedies before filing an action in the civil courts. Plaintiff was granted permission to pursue its claims in a civil court following the final decision of the highest authority within the Chabad-Lubavitch hierarchy (which plaintiff alleged was a requirement of Chabad-Lubavitch polity), and the applicable periods of limitations were tolled during the exhaustion of plaintiff's ecclesiastical remedies. The period between that time and plaintiff's filing of this suit was within the applicable limitations period for each of plaintiff's respective claims, so plaintiff's claims were timely.

3. Defendants disputed that the process was not complete until plaintiff received permission to bring its lawsuit, arguing instead that plaintiff should have sought permission earlier so it could comply with the applicable statutes of limitations. The parties' dispute regarding when the internal procedure was final, however, constituted a factual question that was not appropriate for resolution on appeal. Moreover, resolution of the parties' disagreement would have required interpretation of religious doctrine or polity, which would have been improper because the First Amendment requires that civil courts defer to the resolution of issues of religious doctrine or polity by the highest authority of a hierarchical church organization. Accordingly, it was necessary to defer to the determination of the highest Chabad-Lubavitch authority that the procedure was not final until plaintiff received permission to file a civil lawsuit.

4. While civil courts have general authority to resolve disputes over the ownership of church property, they are prohibited from resolving church property disputes on the basis of religious doctrine and practice and are required to defer to the resolution of issues of religious doctrine or polity by the highest authority of a

hierarchical church organization. This is known as the ecclesiastical abstention doctrine. When a denomination is hierarchical, Michigan courts apply the doctrine and will not use neutral principles of law to resolve the dispute. Under the doctrine, civil courts may not redetermine the correctness of an interpretation of canonical text or some decision relating to the government of the religious polity. Whether a denomination is hierarchical is a factual question. A religious organization is part of a hierarchy when it is but a subordinate part of a general church in which there are superior ecclesiastical tribunals with a more or less complete power of control. A denomination is organized in a hierarchical structure if it has a central governing body that regularly acts within its powers, in contrast to denominations that are organized in the congregational structure, in which all governing power and property ownership remains in the individual churches. If a denomination's constitutional provisions are not so express that civil courts could enforce them without engaging in a searching and therefore impermissible inquiry into church polity, the courts must accept the interpretation provided by the denomination and not delve into the various church constitutional provisions relevant to the conclusion.

5. The trial court did not address whether Chabad-Lubavitch is a hierarchical organization. There was a genuine issue of material fact regarding whether Chabad-Lubavitch is hierarchical in regard to property matters and, therefore, whether the ecclesiastical abstention doctrine applied. Accordingly, the trial court erred by granting summary disposition because both parties presented evidence that raised questions of material fact in support of their respective positions. A remand was necessary to decide the question.

6. The trial court erred by granting summary disposition on plaintiff's trespass claim. Because plaintiff's allegations were sufficient to plead a claim for trespass, summary disposition under MCR 2.116(C)(8) was not appropriate. Similarly, summary disposition under MCR 2.116(C)(10) was also not appropriate because there was a genuine issue of material fact regarding whether plaintiff had an exclusive right to control the property. Moreover, there was also a genuine issue of material fact regarding whether plaintiff gave defendants permission to use the property in the manner that it was being used. If defendants were using the property consistently with plaintiff's permission, defendants were not trespassing.

Reversed and remanded for further proceedings.

1. LIMITATION OF ACTIONS — PERIODS OF LIMITATIONS — EQUITABLE TOLLING-EXHAUSTION OF REMEDIES — MANDATORY DISPUTE RESOLUTION PROCEDURES — RELIGIOUS DISPUTE RESOLUTION REMEDIES.

When dispute resolution procedures are mandatory, the applicable period of limitations is tolled during the exhaustion of the mandatory procedure; in the ecclesiastical context, it is necessary to exhaust religious dispute resolution remedies before filing an action in a civil court.

2. ECCLESIASTICAL ORGANIZATIONS — ECCLESIASTICAL ABSTENTION DOCTRINE — HIERARCHICAL DENOMINATIONS.

Civil courts have general authority to resolve disputes over the ownership of church property, but the ecclesiastical abstention doctrine prohibits them from resolving church property disputes on the basis of religious doctrine and practice and requires them to defer to the resolution of issues of religious doctrine or polity by the highest authority of a hierarchical church organization; under the doctrine, a civil court may not redetermine the correctness of an interpretation of canonical text or some decision relating to the government of the religious polity and may not use neutral principles of law to resolve the dispute; whether a denomination is hierarchical is a factual question; a religious organization is part of a hierarchy when it is a subordinate part of a general church in which there are superior ecclesiastical tribunals with a more or less complete power of control; a denomination is organized in a hierarchical structure if it has a central governing body that regularly acts within its powers, in contrast to a denomination that is organized in the congregational structure, in which all governing power and property ownership remains in the individual churches; if a denomination's constitutional provisions are not so express that civil courts could enforce them without engaging in a searching and therefore impermissible inquiry into church polity, the courts must accept the interpretation provided by the denomination and not delve into the various church constitutional provisions relevant to the conclusion regarding hierarchical organization.

*Honigman Miller Schwartz and Cohn LLP* (by *Norman C. Ankers* and *Brian D. Wassom*) and *Rothberger Johnson & Lyons LLP* (by *L. Martin Nussbaum*) for plaintiffs.

*Barris, Sott, Denn & Driker, PLLC* (by *Todd R. Mendel* and *Josh J. Joss*), for defendants.

Before: STEPHENS, P.J., and HOEKSTRA and METER, JJ.

HOEKSTRA, J. This case arises out of a property ownership dispute between plaintiff, Chabad-Lubavitch of Michigan,[1] and defendants. The property at the center of the dispute is currently titled in the name of defendant Sara Tugman Bais Chabad Torah Center of West Bloomfield (hereafter "Bais Chabad"). Plaintiff maintains that defendants are part of the Chabad-Lubavitch religious hierarchy and that the property must be titled in its name pursuant to Chabad-Lubavitch religious doctrine and polity and the orders of several ecclesiastical bodies. Defendants argue that no religious or legal doctrine requires them to transfer the title of their property and the hierarchy does not control their financial or property interests. The parties also dispute whether the applicable periods of limitations have expired. Plaintiff appeals the trial court's order granting summary disposition in favor of defendants and denying its motion for summary disposition. Plaintiff asks this Court to reverse the trial court and order the transfer of the property to its name consistently with the orders of the Chabad-Lubavitch hierarchy. Because we conclude that the applicable periods of limitations were tolled during the ecclesiastical dispute resolution proceedings and because there are genuine issues of material fact, we reverse the trial court's order granting summary disposition in favor of defendants and remand for further proceedings consistent with this opinion.

There are two pieces of property at issue. The first parcel was acquired by Bais Chabad in 1984 and is

---

[1] According to plaintiff, Congregation Beth Chabad is the former name of Chabad-Lubavitch of Michigan and the name that Chabad-Lubavitch of Michigan still operates under; however, it is not a separate entity. Accordingly, we will refer to a singular plaintiff throughout this opinion.

located at 5595 Maple in West Bloomfield. Bais Chabad built its house of worship, which it continues to operate, on this property. In 1994, Bais Chabad acquired real property located at 6624 Tamerlane in West Bloomfield. This property is an outlot near the first property that provides a walkway to access the adjacent neighborhood. The first dispute regarding the property occurred in 1995, when defendant Rabbi Elimelech Silberberg instituted judicial proceedings before a two-person rabbinic panel regarding complaints he had about Rabbi Berel Shemtov, who is the head Chabad-Lubavitch rabbi in Michigan. After Silberberg began rabbinic proceedings, Shemtov raised countercomplaints within the rabbinic proceeding regarding Silberberg, including the fact that the property was titled in Bais Chabad's name, and not in the name of Chabad-Lubavitch of Michigan. Plaintiff maintains that Chabad-Lubavitch doctrine and polity require all subordinate congregations to title property in the name of a higher authority within the religious hierarchy. Defendants disagree.

The parties do not dispute that Chabad-Lubavitch religious doctrine and polity require internal dispute resolution by means of one of various rabbinic judicial panels or courts. Permission to file a lawsuit in a civil, secular court is required before a dispute may be taken outside the religious organization. There have been five different ecclesiastical decisions made by various panels regarding the property disputes in this case. All five decisions concluded that the property at issue should be titled in plaintiff's name and that transfer of the property's title should be undertaken as soon as possible. Defendants have refused to comply with these directives, maintaining their right to independent property ownership.

Plaintiff received permission to file a civil lawsuit on December 24, 2009, and on April 17, 2012, plaintiff filed the instant lawsuit. In response, defendants moved for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). Thereafter, plaintiff moved for summary disposition under MCR 2.116(C)(10). The trial court held a hearing on the competing motions, and following arguments by both parties, issued its opinion on the record. The trial court denied plaintiff's motion for summary disposition, granted defendants' motion in its entirety, and dismissed the case. Plaintiff now appeals as of right.

## I. STATUTES OF LIMITATIONS

We first address plaintiff's argument that the trial court erred by granting summary disposition under MCR 2.116(C)(7) on the basis of its conclusion that the applicable statutes of limitations barred plaintiff's claims.

We review de novo a trial court's decision on a motion for summary disposition. *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). Under MCR 2.116(C)(7), summary disposition is appropriate if a claim is barred because of the applicable statute of limitations. A motion under MCR 2.116(C)(7) may be supported by affidavits, depositions, admissions, or other documentary evidence as long as the evidence would be admissible. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). The allegations set forth in the complaint must be accepted as true unless contradicted by other evidence. *Id.* "[T]he trial court must accept the nonmoving party's well-pleaded allegations as true and construe the allegations in the nonmovant's favor to determine whether any factual development could provide a basis for recovery." *Hoffman v Boonsiri*,

290 Mich App 34, 39; 801 NW2d 385 (2010). Whether an action is barred by a statute of limitations is a question of law reviewed de novo. *Joliet v Pitoniak*, 475 Mich 30, 35; 715 NW2d 60 (2006).

Resolution of this issue requires us to determine when plaintiff's claims accrued. Under MCL 600.5827, the period of limitations runs from the time the claim accrues, and "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." However, the doctrine of equitable tolling can alter the accrual date. See, e.g., *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 405-406; 738 NW2d 664 (2007). At issue here is whether, under the circumstances in this case, the applicable limitations periods were equitably tolled while the parties were engaged in ecclesiastical dispute resolution proceedings.

The doctrine of equitable tolling has been recognized by Michigan courts; however it has a limited application. See, e.g., *id.*; *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 590 n 65; 702 NW2d 539 (2005). Nevertheless, in *AFSCME v Highland Park Bd of Ed*, 457 Mich 74, 82; 577 NW2d 79 (1998) (opinion by CAVANAGH, J.), the Court considered whether the applicable period of limitations was tolled when the parties negotiated a dispute resolution agreement that provided for a mandatory grievance procedure ending with nonbinding arbitration. The lead opinion noted that caselaw favors exhaustion of grievance procedures before filing suit. *Id.* at 83. Ultimately, the Court held that when grievance procedures are mandatory, the applicable period of limitations is tolled during the exhaustion of the mandatory procedure. *Id.* at 90.

In this case, plaintiff specifically argues that even if the applicable periods of limitations expired before the

filing of its lawsuit, the running of the periods of limitations was tolled by the ecclesiastical dispute resolution proceedings because Chabad-Lubavitch's polity requires express permission before a lawsuit may be filed in a secular court. Moreover, it maintains that application of the First Amendment's guarantees precludes the enforcement of the statutes of limitations without considering Chabad-Lubavitch's own process for resolution of ecclesiastical disputes.

The record in this case shows that following the final decision of the highest authority within the Chabad-Lubavitch hierarchy, plaintiff was granted permission on December 24, 2009, to pursue its claims in the civil courts and thereafter filed its complaint on April 17, 2012. This intervening period was within the applicable limitations period for each of its claims.[2] *Highland*

---

[2] Count I of plaintiff's complaint requested specific performance of the "arbitration contract" wherein defendants agreed to be bound by the decision resulting from the din Torah (a formal proceeding before a three-member rabbinic court); actions for breach of contract or specific performance of a contract are subject to a six-year statute of limitations under MCL 600.5807(8) ("The period of limitations is 6 years for all other actions to recover damages or sums due for breach of contract."). Count II requested a declaratory judgment under MCR 2.605 declaring that Chabad-Lubavitch is hierarchical, that Bais Chabad is subordinate, and that Chabad-Lubavitch has the right to ownership and control of the property. Actions for declaratory relief derive from the underlying claim for substantive relief and are subject to the statute of limitations applicable to the underlying claim. *Taxpayers Allied for Constitutional Taxation v Wayne Co*, 450 Mich 119, 128; 537 NW2d 596 (1995). Because there is no specific statute of limitations governing the claim underlying plaintiff's request for declaratory relief, the six-year residual statute of limitations set forth by MCL 600.5813 applies ("All other personal actions shall be commenced within the period of 6 years after the claims accrue and not afterwards unless a different period is stated in the statutes."). Count III requested a determination of interests in land under MCL 600.2932 and MCR 3.411, wherein plaintiff asked the court to find that Chabad-Lubavitch has established title to the property by virtue of the religious hierarchy and is entitled to an order requiring defendants to

*Park*, 457 Mich at 90 (opinion by CAVANAGH, J.), held that a plaintiff's claims are tolled during the exhaustion of mandatory dispute resolution procedures. Applying this principle to the issue in this case, the applicable periods of limitations were tolled during the exhaustion of plaintiff's ecclesiastical remedies. Therefore, plaintiff's claims were timely.

Additionally, defendants dispute the date that the ecclesiastical dispute resolution process was concluded. Plaintiff maintains that the process was not complete until it received permission on December 24, 2009, to bring a lawsuit in civil court. Defendants maintain that plaintiff should have sought permission earlier so as to comply with the applicable statutes of limitations. Thus, the question becomes whether the December 24, 2009 date marks the completion of the ecclesiastical dispute resolution process. However, the parties' dispute regarding when the internal procedure was final constitutes a factual question that is not appropriate for resolution by this Court on appeal. Moreover, resolution of the parties' disagreement about when the internal dispute resolution process was final would require this Court to interpret religious doctrine or polity. Engaging in such an interpretation would be improper because the First Amendment "requires that civil courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization." *Jones v Wolf*, 443 US 595, 602; 99 S Ct 3020; 61 L Ed 2d 775 (1979). Accordingly, we are required to

transfer title to plaintiff; actions to determine the interest in land are subject to a 15-year statute of limitations under MCL 600.5801(4). Finally, count IV alleged trespass on the basis of defendants' continued use of the property. Actions for trespass are subject to a three-year statute of limitations under MCL 600.5805(10) ("[T]he period of limitations is 3 years after the time of the . . . injury for all other actions to recover damages for . . . injury to a person or property.").

defer to the determination of the highest Chabad-Lubavitch authority that the procedure was not final until plaintiff received permission to file a civil lawsuit. See *id*. Therefore, plaintiff's complaint was timely filed.

In further support of our conclusion that the doctrine of equitable tolling applied in this case, we note that Michigan law has previously recognized the necessity of exhaustion of religious dispute resolution remedies before filing an action in the civil courts. In *Buettner v Frazer*, 100 Mich 179, 181; 58 NW 834 (1894), our Supreme Court declined to consider a dispute between a pastor and the trustees of the German Evangelical Lutheran Christus Church of Detroit until both parties had exhausted "the remedies afforded by the ecclesiastical body" because the issues raised were "of ecclesiastical cognizance." Similarly, in *Miller v McClung*, 4 Mich App 714, 722-723; 145 NW2d 473 (1966), this Court implicitly held that exhaustion of remedies within a church before seeking relief from the courts was a necessary prerequisite to civil litigation in the context of a property dispute between members of a congregation and that congregation's leadership. In *Miller*, this Court addressed the issues raised before it after concluding that the plaintiffs had exhausted their remedies within the church before seeking relief from the trial court. *Id*. at 723.

Finally, we note that the primary purposes behind the enactment of statutes of limitations "can be summarized as (1) encouraging the plaintiffs to diligently pursue claims and (2) protecting the defendants from having to defend against stale and fraudulent claims." *Wright v Rinaldo*, 279 Mich App 526, 533; 761 NW2d 114 (2008). Accordingly, the policy behind the enactment of statutes of limitations is not circumvented by applying the doctrine of equitable tolling in this case

because plaintiff has not slept on its rights and defendants are not being asked to defend a stale claim for which the evidence is long gone or forgotten. Rather, the parties have been working toward a resolution of the issues raised in this case for several years in the ecclesiastical context, and there has been very little delay between the religious dispute resolution proceedings and the instant lawsuit. Thus, this case does not present the type of circumstances that statutes of limitations are meant to prevent.

Defendants also argue that equitable tolling cannot be applied in this case because the parties were engaged in voluntary arbitration proceedings and that under *Varga v Heritage Hosp*, 139 Mich App 358, 359-360; 362 NW2d 282 (1984), which specifically held that voluntary arbitration proceedings do not toll the limitations period, the periods of limitations were not tolled. However, contrary to defendants' argument, as discussed, we conclude that the parties were not engaged in arbitration proceedings. While the parties did sign a document that was titled "arbitration contract," the document was an agreement to accept as binding the decision of the rabbinic panel that was convened to resolve the dispute under Chabad-Lubavitch's ecclesiastical procedures. Other than the title of one document, nothing about the dispute resolution process that the parties were involved in suggested that the parties were engaged in voluntary arbitration. Rather, it is plain that the parties were attempting to resolve their dispute under Chabad-Lubavitch's mandatory ecclesiastical procedure.

In summary, we conclude that the applicable periods of limitations were equitably tolled during the time that the parties were engaged in the mandatory ecclesiastical dispute resolution process. Therefore, the periods of

limitations did not begin to run until the resolution of the ecclesiastical proceedings. Accordingly, we conclude that plaintiff's claims were timely filed and the trial court erred by granting summary disposition under MCR 2.116(C)(7).

## II. ECCLESIASTICAL ABSTENTION DOCTRINE

Having determined that plaintiff's claims are timely, we now consider whether summary disposition was nonetheless appropriate under MCR 2.116(C)(10) on the basis of the ecclesiastical abstention doctrine. In determining whether to grant summary disposition pursuant to MCR 2.116(C)(10), the court tests the factual support for a claim based on the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties. *Coblentz*, 475 Mich at 567. The evidence is viewed in the light most favorable to the nonmoving party. *Id.* at 567-568. "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to a judgment as a matter of law." *Maiden*, 461 Mich at 120.[3]

Plaintiff argues that the trial court should have denied defendants' motion for summary disposition and instead granted its motion because under the ecclesiastical abstention doctrine courts must defer to the decision of the highest ecclesiastical tribunal within a church of hierarchical polity. In particular, plaintiff argues that because Chabad-Lubavitch is a religious

---

[3] We note that the trial court did not specifically address this issue in its decision granting summary disposition; however, we consider whether summary disposition was appropriate in light of the ecclesiastical abstention doctrine under MCR 2.116(C)(10) because the parties have presented evidence outside the pleadings in support of their respective arguments. See *Steward v Panek*, 251 Mich App 546, 554-555; 652 NW2d 232 (2002).

hierarchy and its highest authority has declared that title to the property must be in plaintiff's name, the trial court was required to defer to the decision of the hierarchy's highest authority and enforce its order. Defendants counter that Chabad-Lubavitch is not hierarchical when it comes to property and financial matters; thus, the ecclesiastical abstention doctrine does not apply in this case.

"[T]he First and Fourteenth Amendments to the United States Constitution protect freedom of religion by forbidding governmental establishment of religion and by prohibiting governmental interference with the free exercise of religion." *Bennison v Sharp*, 121 Mich App 705, 712; 329 NW2d 466 (1982). See also US Const, Ams I and XIV; Const 1963, art 1, § 4. This Court has clearly held that "civil courts have general authority to resolve disputes over the ownership of church property." *Bennison*, 121 Mich App at 712. However, the First Amendment

> "severely circumscribes the role that civil courts may play in resolving church property disputes" by prohibiting civil courts from resolving church property disputes on the basis of religious doctrine and practice and requiring that courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization. [*Id.* at 712-713, quoting *Jones*, 443 US at 602.]

In *Bennison*, citing *Watson v Jones*, 80 US (13 Wall) 679; 20 L Ed 666 (1871), this Court explained that the approach to a civil court's resolution of a dispute over church property turns on which of three "general headings" apply. *Bennison*, 121 Mich App at 713-714. The first class is "where property is purchased for the use of a religious congregation, 'so long as any existing religious congregation can be ascertained to be that congregation or its regular and legitimate successor, it is entitled to the use

of the property'." *Id.* at 714, quoting *Watson*, 80 US at 726. The second class is that in which property is held by a congregation that, " 'by nature of its organization, is strictly independent of other ecclesiastical associations' " and " 'owes no fealty or obligation to any higher authority.' " *Bennison*, 121 Mich App at 714, quoting *Watson*, 80 US at 722. If the second class applies, the dispute is governed " 'by the ordinary principles which govern voluntary associations[.]' " *Bennison*, 121 Mich App at 714, quoting Watson, 80 US at 726. The third class involves a situation in which the property is held by "a religious congregation or ecclesiastical body which 'is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete in some supreme judicatory over the whole membership of that general organization.' " *Bennison*, 121 Mich App at 714, quoting Watson, 80 US at 722-723. This third class describes hierarchical denominations. See *Lamont Community Church v Lamont Christian Reformed Church*, 285 Mich App 602, 617-620; 777 NW2d 15 (2009). "The determination of whether a denomination is hierarchical is a factual question." *Id.* at 615.

If a religious denomination is hierarchical, the ecclesiastical abstention doctrine applies. *Id.* at 616. Under this doctrine, "civil courts may not redetermine the correctness of an interpretation of canonical text or some decision relating to government of the religious polity." *Smith v Calvary Christian Church*, 462 Mich 679, 684; 614 NW2d 590 (2000) (quotation marks and citation omitted).[4] Instead, courts must "defer to the

---

[4] "Religious doctrine refers to ritual, liturgy of worship and tenets of the faith." *Maciejewski v Breitenbeck*, 162 Mich App 410, 414; 413 NW2d 65 (1987). "Polity refers to organization and form of government of the church." *Id.*

resolution of those issues 'by the highest court of a hierarchical church organization.' " *Lamont Community Church*, 285 Mich App at 616, quoting *Bennison*, 121 Mich App at 713. Thus, when a denomination is hierarchical, trial courts must enter a judgment that is consistent with any determinations already made by the denomination. *Lamont Community Church*, 285 Mich App at 616. Said differently, when a denomination is hierarchical, Michigan courts will apply the ecclesiastical abstention doctrine and will not use neutral principles of law to resolve the dispute. *Smith*, 462 Mich at 684; *Lamont Community Church*, 285 Mich App at 624-625; *Calvary Presbyterian Church v Presbytery of Lake Huron of the United Presbyterian Church*, 148 Mich App 105, 110; 384 NW2d 92 (1986). See also *Jones*, 443 US at 602 (holding that the First Amendment "requires that civil courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization").

A religious organization is part of a hierarchy when it "is but a subordinate part of a general church in which there are superior ecclesiastical tribunals with a more or less complete power of control . . . ." *Bennison*, 121 Mich App at 720. In *Lamont Community Church*, 285 Mich App at 618, this Court explained further that a denomination is organized in a hierarchical structure when it has a "central governing body which has regularly acted within its powers," in contrast to denominations that are organized in the "congregational structure," which have "all governing power and property ownership remaining in the individual churches." (Quotation marks and citations omitted.)

In *Lamont Community Church*, the issue before this Court was whether the trial court properly determined that the church involved was a hierarchical denomina-

tion with respect to its property. *Id*. at 617. The trial court determined that the church was hierarchical with respect to doctrinal and spiritual matters as a matter of law, but held a fact-finding hearing to determine whether it was hierarchical regarding property. *Id*. at 610-611. This Court first noted that the trial court considered testimony that "went well beyond anything [it] should have considered." *Id*. at 617. This Court noted that "it is a violation of the First and Fourteenth amendments for courts to substitute their own interpretation of a denomination's constitution for that of the highest ecclesiastical tribunals in which the church law vests authority to make that interpretation." *Id*. (quotation marks and citations omitted). Thus, this Court explained that if a denomination's constitutional provisions "are not so express that the civil courts could enforce them without engaging in a searching and therefore impermissible inquiry into church polity, courts must accept the interpretation provided by the denomination and not delve into the various church constitutional provisions relevant to this conclusion." *Id*. (quotation marks and citations omitted).

In this case, the trial court did not address whether Chabad-Lubavitch is a hierarchical organization. The parties dispute this issue in regard to the control of finances and property, and both sides cite decrees from Chabad-Lubavitch leaders, the articles of incorporation, the general regulations governing shluchim,[5] and the affidavits of both rabbis in support of their arguments. In particular, plaintiff argues that there is no genuine issue of material fact in regard to the hierarchical

---

[5] Plaintiff's complaint explains that shluchim are designated by the spiritual leader as "official representatives of the Chabad Lubavitch Organization with the mission to strengthen Judaism and disseminate Chassidic teachings within a particular geographic territory."

nature of Chabad-Lubavitch by citing its complaint wherein it claims that Chabad-Lubavitch refers to itself as a hierarchy, by referring to the 1958 resolution adopted by the Board of Trustees of Agudas Chasidei Chabad (the policymaking organization of Chabad-Lubavitch) "acting in its capacity as the Hierarchy of all Chabad activities," by describing the organizational structure of the religion, including the process by which religious leaders are selected and assigned to regions, and by referring to general regulations created in 1995 to "reaffirm" the hierarchical relationship that were signed by several shluchim, including Silberberg. Plaintiff also details the way in which the Chabad-Lubavitch organization helped to finance and support the establishment of Bais Chabad in support of its claim that Chabad-Lubavitch is a hierarchy, and plaintiff notes that Bais Chabad's articles of incorporation expressly bind it to obey the discipline and rules of the Chabad-Lubavitch hierarchy. In his affidavit, another of the shluchim, Rabbi Kasriel Shemtov, stated that Chabad-Lubavitch is a hierarchical organization and that Bais Chabad is a subordinate component of the organization, "subject to the authority and control of the hierarchy, both as to religious matters and as to matters involving ownership and use of property." Finally, plaintiff claims that defendants acknowledged their part in the hierarchy when soliciting and accepting monetary donations.

In contrast, defendants argue that they are not subordinate to a hierarchical organization in regard to finance or property matters. To support their claim, defendants cite a letter written by the Rebbe[6] that states that "each institution should be autonomous" and that the leaders of Chabad-Lubavitch are there just

---

[6] Plaintiff's complaint explains that Rebbes are the spiritual leaders who head the Chabad-Lubavitch organization.

to give advice, not to control individual congregations, and also a guidance written by a rabbi on behalf of the Rebbe stating that individual institutions must deal with their own finances and cannot use the institution's stationary, letters, or charter when handling their finances or collecting money. Defendants also note that in 1984, the Rebbe stated that "it is well known that the various Chabad institutions are financially completely independent of our central office." Defendants claim that plaintiff's instructions to local Chabad-Lubavitch houses show that Chabad-Lubavitch is not hierarchical in regard to property and finance because the houses were instructed to incorporate separately and hold property independently, and it was explained that plaintiff wanted no legal or financial responsibility for any property owned by separate shluchim. Defendants note that Silberberg's contract highlights his financial independence because it states that there is a hope that he will become financially independent of the institution. Defendants cite the fact that several other Chabad-Lubavitch congregations in Michigan own their own property. Defendants maintain that the language in their articles of incorporation is simply language required by the state and note that the Bais Chabad itself has never recognized a Chabad-Lubavitch hierarchy concerning its property and financial matters. In his affidavit, Silberberg states that the Bais Chabad has always been financially independent from plaintiff and that the 1995 regulations regarding the hierarchy were signed on his behalf only and have no effect on the Bais Chabad.

On the record before us, we conclude that there is a genuine issue of material fact regarding whether Chabad-Lubavitch is hierarchical in regard to property matters and, thus, whether the ecclesiastical abstention

doctrine applies in this case.[7] Accordingly, the trial court erred by granting summary disposition because, as previously detailed, both parties have presented evidence that raises questions of material fact in support of their respective positions. *Rozwood*, 461 Mich at 120. On remand, the trial court should be careful to avoid engaging in an impermissible "searching inquiry" into the doctrine and polity of Chabad-Lubavitch because courts "must take special care to scrutinize the document in purely secular terms, and not to rely on religious precepts in determining the intent of the document." *Lamont Community Church*, 285 Mich App at 618 & n 8 (quotation marks and citation omitted).

### III. TRESPASS CLAIM

Finally, plaintiff argues that the trial court should not have dismissed its trespass claim under MCR 2.116(C)(8) because its complaint adequately pleaded the prima facie elements of trespass. Plaintiff further argues that it was entitled to summary disposition under MCR 2.116(C)(10) because it has the exclusive right to possess and control the property by virtue of the rulings and decrees of the hierarchy's highest authority and defendants continue to occupy the property despite the orders to transfer title.

Again, we review de novo a trial court's decision to grant or deny a motion for summary disposition.

---

[7] We note that resolution of the hierarchy question may also resolve the parties' dispute regarding whether Silberberg's actions bind the congregation. If the congregation is part of a hierarchy, courts must defer to the interpretation of the highest authority within the hierarchy; accordingly, plaintiff's claim that Silberberg's actions bind the congregation would be entitled to deference. If there is no hierarchy, whether Silberberg's actions are binding on the congregation presents a question of fact in light of the evidence presented by both parties regarding the effect of Silberberg's actions.

Summary disposition pursuant to MCR 2.116(C)(8) is proper if the nonmoving party failed to state a claim on which relief can be granted. *Kuznar v Raksha Corp*, 481 Mich 169, 176; 750 NW2d 121 (2008). In reviewing a trial court's decision to grant summary disposition pursuant to MCR 2.116(C)(8), we review the pleadings alone, accepting all factual allegations in the complaint as true and construing them in a light most favorable to the nonmoving party. *Id.* A motion under MCR 2.116(C)(10) is properly granted when "the proffered evidence fails to establish a genuine issue regarding any material fact . . . ." *Maiden*, 461 Mich at 120.

This Court has explained that "[e]very unauthorized intrusion upon the private premises of another is a trespass . . . ." *Wiggins v City of Burton*, 291 Mich App 532, 555; 805 NW2d 517 (2011) (quotation marks and citations omitted) (alteration in original). Recovery for a trespass to land "is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Id.* (quotation marks and citation omitted). Moreover, it is a trespass for an easement holder to exceed the scope of the easement. *Schadewald v Brulé*, 225 Mich App 26, 40; 570 NW2d 788 (1997).

Plaintiff alleged the following in its complaint with respect to its trespass claim:

121. Chabad-Lubavitch of Michigan has the exclusive right to possess and control the Property.

122. To the extent that Defendants are defying the authority of Chabad-Lubavitch of Michigan, they are occupying and using the Property in a manner unauthorized by Chabad-Lubavitch of Michigan.

123. Defendants' invasion into the Property is direct, immediate, and tangible.

124. Defendants are interfering with, and intruding upon, Chabad-Lubavitch of Michigan's exclusive rights to possess and control the Property.

125. Defendants' actions in this regard have been intentional and willful at all material times.

126. Defendants' actions in this regard have been, and are, a continuing wrong.

127. Defendants are committing trespass against Chabad-Lubavitch of Michigan with respect to the property.

128. Defendants are jointly and severally responsible and liable for said trespass.

These allegations, taken as true, are sufficient to plead as a matter of law a claim for trespass; therefore, summary disposition pursuant to MCR 2.116(C)(8) was not appropriate. Similarly, summary disposition under MCR 2.116(C)(10) was also not appropriate because there is a genuine issue of material fact regarding whether plaintiff has an exclusive right to control the property. If, as plaintiff claims, it is entitled to exclusive ownership of the property, then it is possible that plaintiff could prevail on its trespass claim. Because there is a genuine issue of material fact in regard to whether plaintiff is entitled to ownership of the property, there is similarly a genuine issue of material fact regarding whether plaintiff is entitled to recover on its trespass claim. Moreover, there is also a genuine issue of material fact regarding whether plaintiff gave defendants permission to use the property in the manner that it is being used. If defendants are using the property consistently with plaintiff's permission, defendants are not trespassing. However, the record before us is not clear in regard to whether plaintiff has given

defendants permission to use the property and the scope of any permission given. Therefore, the trial court erred by granting summary disposition on plaintiff's trespass claim.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219.

STEPHENS, P.J., and METER, J., concurred with HOEKSTRA, J.